## THE STATE *v.* HARMAN B. BENJAMIN.

| | |
|---|---|
| 7 | 47 |
| 44 | 323 |
| 44 | 1115 |
| 7 | 47 |
| 45 | 650 |
| 7 | 47 |
| 47 | 1590 |
| 7 | 47 |
| 48 | 277 |
| 48 | 306 |
| 7 | 47 |
| 111 | 937 |

An indictment, couched in the very terms of the statute, charging that the accused did inveigle, steal and carry away a slave, so that the owner was deprived of her services, necessarily implies that the acts were criminal; and it is not essential that it should charge that the acts were done feloniously, maliciously or unlawfully.

Where it does not appear from the record that the accused, before trial, was served with a list of the jury, it will be presumed he was served, or waived his right, unless there be evidence that he objected to going to trial upon that ground.

APPEAL from the District Court of Pointe Coupée, *Farrar*, J. *C. Ratliff* and *J. R. Grymes*, for appellant. The judgment of the court *(Slidell, J., absent,)* was pronounced by

PRESTON, J. The defendant is indicted for inveigling, stealing and carrying away a slave, named *Maria*, the property of *Mrs. Hamilton*, so that the owner was deprived of the use and benefit of her services. There is a further count, for aiding the slave in running away from the service of her mistress. It is charged, that the acts were done at the parish of West Feliciana, on the 4th of July, 1849. The accused was tried in the parish of Pointe Coupée, having obtained a change of *venue*, was found guilty, sentenced to two years' imprisonment in the penitentiary, and has appealed.

His counsel contends, that the indictment is insufficient, because it is not charged that the acts were done feloniously, or maliciously, or unlawfully, or with any qualification showing that they were criminal.

The indictment is couched in the very terms of the statute, that the accused did inveigle, steal and carry away the slave, so that the owner was deprived of her services. These terms imply, that the acts were criminal. The last count is, for aiding the slave to run away from her mistress, so that the owner was deprived of her services. This describes, as clearly as possible, an act made unlawful by statute, and is equal to an express charge, that the act was unlawful. The case is different from that of *The State* v. *Reed*, where the words uttered by the accused might have been perfectly innocent; and there was no charge that the uttering of them was unlawful, wicked, malicious or felonious, nor any circumstances stated in the indictment which necessarily gave the words such a character. 6th Ann. 228.

The opinion of the court, in the case of *The State* v. *Ritchie*, prosecuted for the offence now under consideration, seems to indicate, that if the special ver-

dict had been in the words of the statute, without any qualification, it would have been sufficient; and if so, an indictment containing the words of the statute is sufficient to support a judgment, on a general verdict.

It is assumed, in a bill of exceptions, also in a charge to the jury required from the court, and in an application for a new trial, that the slave ran away from her mistress, in Pointe Coupée, in July, 1849, and was arrested in the quarter of the accused, in February, 1850. It is contended by his counsel, in support of the bill of exceptions, charge applied for, and application for new trial, that proof of the slave's arrest in the defendant's quarter, or that he harbored her, tends to establish another and distinct statutory offence, subject to a different punishment, and not to establish the crime charged against the accused. It undoubtedly tends to establish the offence of harboring the slave, but it by no means follows, that it does not equally tend to prove, inveigling and stealing the slave, and aiding her to run away. The same evidence that tends to prove one crime, often tends to prove another. The firing a gun may tend to prove an attempt to kill, or manslaughter, by an actual killing; so the felonious taking of goods may be offered to prove a burglary as well as larceny.

The evidence offered was admissible, and the court properly refused to charge the jury, that it did not tend to support the charge of inveigling and stealing, and aiding the slave to run away. The fact, that she was in defendant's quarter, the same day that he purchased her, as a runaway, raised a strong presumption of those charges, as the possession of property recently stolen, raises a presumption, that the possessor is the thief, until the possession is otherwise explained.

And certainly, in this case, the judge, at the request of the counsel of the accused, guarded his charge sufficiently against any unreasonable effect of the presumption. For he instructed the jury, that the facts and circumstances proved, should be consistent with the hypothesis of the guilt of the accused; that they should not only be conclusive of his guilt, but actually exclude every other hypothesis except those affirmed by the prosecuting attorney; and that if they entertained a reasonable doubt, that the accused committed the offence charged in the indictment, in the manner and form charged, they were bound to acquit him.

It is urged, that there is error in the proceedings, because they do not show that a list of the jury, which was to pass upon his trial, was served upon the prisoner two days before the trial. An order of court was made, directing it. We find no objection made to going to trial; none by way of challenge; no application for a new trial, or motion in arrest of judgment on this ground; and are bound to presume, therefore, that the list was served upon the prisoner, or that he waived that formality, and was content with the jury that tried him. In this respect, the case is entirely different from that of *The State* v. *Howell,* in which the objection was made when the prisoner was put upon trial. There must be an essential defect in the prosecution, and which could not be waived in the district court, to induce this court to notice it, where the district court did not pass upon it, because no objection was made at the proper time and place.

When the case was called for trial, the accused asked for an attachment against one of his witnesses, *Mrs. Lyons.* It was shown, that she was so far advanced in pregnancy as to be unable to attend court. The attachment was properly refused, and the only relief of the prisoner was to obtain a continu-

STATE<br>*v.*<br>BENJAMIN.

ance of the cause, for which he did not ask, and therefore is entitled to no relief on this account.

In the progress of the trial, the following question was propounded by the counsel of the prisoner, in cross-examination, to *Mr.* and *Mrs. Hamilton,* witnesses on behalf of the State: "Were you, or were you not, informed by a gentleman residing in Pointe Coupée, as testified by you in your testimony in chief, he had caught the said slave in the parish of Pointe Coupée, and that she had escaped from his custody before he could convey her to you?"

The question was objected to by the district attorney, and rejected by the court, on the ground that the answer would only furnish hearsay evidence.

It is true, as argued by the defendant's counsel, that the fact to be elicited by a catagorical answer to the question, that a person did give such information, was original evidence; but the information itself, was hearsay evidence. The information was objectionable on this ground, and the original evidence immaterial to the issue. The mere fact, that a person made the statement supposed in the question, had no tendency to disprove the charge that the accused inveigled or stole this slave in West Feliciana, or aided her in running away.

In cross-examination, much latitude is always allowed. For the good order and dispatch of public business, it must be limited by the discretion of the judge. Much must be left to that discretion, to govern which, no precise rule can be laid down. Greenleaf on Evidence, 3449.

We think it would save time and trouble, and perhaps be more satisfactory to the court, jury and parties, to permit such immaterial statements, having some connection with the matter in issue, to be made when desired by a prisoner, if not inconsistent with the time and order of the court. The judge could always, in his charge, separate the legal and material testimony from the irrelevant, without infringing on the exclusive province of the jury to consider the material facts; and the Constitution and laws, in confiding trials involving life, liberty and property to juries, presupposes capacity to make the distinction, when pointed out to them by the court, and integrity to render their verdict according to law, and on legal evidence. But we cannot say that the discretion of the court was improperly exercised in this case, or the rules of evidence violated.

There are other matters pressed upon this court, in support of the application of the accused for a new trial, which was refused by the district court. They fall within the rulling of this court in the cases of *The State* v. *Hunt, Bret et al.,* that we had no constitutional power to afford relief.

The judgment of the district court is affirmed, with costs.