HOLLAND
v.
MILLER.

---

## STATE v. JOHN MUNCO.

The indictment charged, that the accused, on the second day of December, 1855, at &c., "upon the body of one *Adam Lammert*, a free white person, in the peace of the State, then and there being, with a certain dangerous weapon, called a shot gun, then and there loaded with gun powder and divers leaden shot, which the said *John Munco*, then and there, in both his hands, had and held *at* and against the said *Adam Lammert*, feloneously, wilfully and of his malice, aforethought, did shoot and discharge with intent, thereby, wilfully and of his malice aforethought, the said *Adam Lammert*, to kill and murder, contrary, &c." *Held:* That, although the indictment does not follow the language of the Statute, yet it sufficiently charges the accused. First, with an assault, by wilfully shooting at *Lammert*, &c., and Second, with an assault with an intent, in that manner, to commit murder.

Although the word "assault," may not be used, yet when the indictment charges the accused with shooting a gun, at and against another, with intent to commit murder, it will sufficiently imply an assault.

On the trial of the accused, the State offered to prove that *L.* was *struck* with shot; objection was made to the evidence, that "there was no allegation in the indictment that *L.* was shot or wounded." *Held:* That the testimony was admissible.

Where the proof offered in evidence supports the indictment, although it proves a more heinous offence, it is within the discretion of the Judge to receive it.

The District Judge charged the jury "That although death did not ensue from the act, yet the malice aforethought, was equally implied from the act, as though death did ensue." *Held:* The charge is erroneous, because it implies an opinion upon the act proven, which the Judge is now prohibited from giving.

It is not necessary, on a prosecution for shooting, &c., &c., that it should be shown how the gun was loaded. This may be presumed from all the circumstances.

12  625
48  306

12  625
111  937

12  625
122  520

APPEAL from the District Court of Catahoula, *Bary*, J.   *Dalty* and *W. H. Houston*, for the State. *McGuin & Ray*, for the prisoner.

MERRICK, C. J. It is charged, in the indictment in this case, that the accused, on the second day of December, 1855, at &c., "upon the body of one *Adam Lammert*, a free white person, in the peace of the State, then and there

being, with a certain dangerous weapon called a shot gun, then and there loaded with gun powder and divers leaden shot, which the said *John Munco,* then and there, in both his hands, had and held *at* and against the said *Adam Lammert,* feloneously, wilfully and of his malice aforethought, did shoot and discharge with intent, thereby wilfully and of his malice aforethought, the said *Adam Lammert,* to kill and murder, contrary, &c."

The accused having been found guilty under the indictment, moved an arrest of judgment, on the ground that the indictment does not charge the accused with any crime or offence known to the law. The motion in arrest of judgment was overruled, and the accused was sentenced to *four* years imprisonment int the penitentiary.

His counsel urge the ground assumed in the motion in arrest of judgment, as a cause of reversal of the judgment here.

Although the indictment does not follow the language of the Statute, yet we think that it embraces, in the act charged, two of the offences provided for by the ninth Section of the Act 14th March, 1855. (p. 131,) viz: It charges the accused,

1st. With an assault by wilfully shooting at *Lammert.*

2d. With an assault with an intent, in that manner, to commit murder.

It is true the word "assault" is not used in the indictment, but the shooting of a gun at and against another with intent to commit murder, is certainly an assault. The offence prohibited by the Statute has, therefore, been substantially alleged.

The motion in arrest of judgment was, on the ground stated, properly overruled.

As we consider the lower court had a sufficient indictment before it, we will consider the regularity of the proceedings on the trial, and notice the bills of exception taken by the appellant.

I. The State offered witnesses on the trial to prove that *A. Lammert* was *struck* with the shot, and to prove the number and extent of his wounds, the testimony was received, notwithstanding the defendant objected, that "there was no allegation in the indictment that *Lammert* was shot or wounded."

Doubtless before the passage of the Act of 14th March, 1855, entitled an Act to regulate the mode of procedure in criminal prosecutions, which has been borrowed from the recent English laws, the testimony might have been admissible to show the manner in which the gun was loaded and the intent of the accused.

However that may be, we think it perfectly clear that the testimony was admissible under the ninth section of said Act. It is in these words:

"Be it enacted, &c., That if, upon the trial of any person for any crime or misdemeanor, it shall appear that the facts given in evidence amount in law to some other offence, he shall not, by reason thereof, be entitled to be acquitted of the offence charged, and no person tried for such crime or misdemeanor shall be liable to be afterwards prosecuted for such other offence on the same facts, unless the court before which such trial may be had shall think fit, in its discretion, to discharge the jury from giving any verdict upon such trial, and to direct such person to be indicted for the offence shown to have been committed, in which case such person may be dealt with, in all respects, as if he had not been put upon his trial."

Before considering this Section, we will premise, by adverting to a distinction between the common law (which was the same in both criminal and civil proceedings,) and our own in civil proceedings.

Under our law, in civil cases, if the testimony is once received, we pass upon it whether it supports the allegations of the party offering it or not. At common law, unless the testimony when received corresponds with the allegation in the declaration or indictment, there is a variance and the party fails, notwithstanding the jury has heard evidence proving a demand or a crime though different from that alleged.

The usual mode, therefore, is to suffer the testimony to go to the jury, relying upon the instructions of the Judge to the jury, as to what constitutes a variance. 1 Greanleaf, p. 65; 1 Chitty's Pleadings, pp. 303, 304; 3 Starkie Ev., 1526.

As, at common law, all misdemeanors merge in the felony, a *quasi* variance takes place, when under an indictment for a misdemeanor the facts establish the offence charged, but because they also show an aggravation of that offence which, by its aggravation, is made a felony, the misdemeanor is merged in the felony, and the offence charged is considered as not proved. 1 Bishop Crim. Law, No. 543.

Mr. Wheaton remarks, that "It has been frequently held, in this country, that where, on an indictment for assault, an attempt or conspiracy with an intent to commit a felony, it appeared that the felony was actually consummated, it was the duty of the court to charge the jury that the misdemeanor had merged and the accused must be acquitted."

"It used to be supposed from the casual remarks of old text writers, that the common law rule was, that whenever a lesser offence met a greater, the former sunk into the latter: and hence, in a large class of prosecutions, the defendant would succeed in altogether escaping conviction by a subtle fiction having no origin either in common sense or necessity."

"Conceiving, however, (Mr. Wheaton proceeds,) the principle to be too deeply settled to be overruled, the courts of Maine, Massachusetts, New York and Pennsylvania, as has been seen, have held, that where a felony was proved, the defendant was to be acquitted of the constituent misdemeanor, and though the motion was sturdily resisted elsewhere, it has taken deep and general root." Wheaton Com. Law, 2d Ed., 197–8.

Now an examination of the statute of 1855, relative to the mode of criminal procedure, will show that it was intended to sweep from the criminal law, among others, this class of technicalities, and place the administration of criminal justice upon a more reasonable footing.

The first section of the Statute authorizes amendment of the indictment, in order to prevent acquittal from certain crimes.

Sections 1, 2, 3, 4, 5 and 6, directs that the mode of framing certain indictments in a more general manner than heretofore, in order also to avoid fatal variances which might otherwise arise from the proof.

Section seven, enables the jury, on an indictment charging the actual commission of an offence, to bring in a verdict charging the accused with an *attempt* to commit the offence.

By the eighth section, on an indictment for robbery, the jury may find the accused guilty of an assault with intent to rob.

By the tenth section, a person indicted for embezzlement, as a clerk, &c., may be found guilty of larceny, and *vice versa.*

STATE
v.
MUNCO.

By the eleventh section, on a trial of two or more persons indicted for joint-ly receiving any property, any of the parties may be found guilty who shall be proved to have received any part of said property.

It is now seen that the ninth section, in furtherance of the design and gene-ral scope of this act, provides that where the testimony shows that a person charged with one offence has committed another offence, by reason of the proof containing aggravating or other circumstances, giving another name or complexion to the act, that he is not to be acquitted of the offence charged un-less the court shall discharge the jury and direct the defendant to be indicted for that other offence. This section, therefore, remedies the evil complained of by Mr. Wheaton. It makes, in part, the converse of the rule recognized in *Steadman's* case, 6 Ann., 289, that " where the accusation of a crime includes an offence of an inferior degree, the jury may (under the proof,) discharge the defendant of the high crime and convict him of the less atrocious, " and now the proof of the greater offence sustains the less.

Under the Statute in question, a person cannot now escape, because it turns out by the proof, that the offence which he has committed is more aggravated than that with which he is charged. If the proof sustains the indictment, the accused is not now to be acquitted, because the same proof would also sustain an indictment for another offence. The doctrine of *variances* still applies to indictments, and the accused cannot be convicted unless the proof corresponds with the indictment, but where it *does* correspond, the accused shall not escape, because the proof is in excess of the allegations, even by the aggravating cir-cumstances, unless the Judge shall be of the opinion that the offence is so atro-cious that the accused ought to be put upon his trial for the more aggravated offence.

It will therefore be seen, that if the proof offered in evidence supported the indictment, although it proved a more heinous offence, it was within the dis-cretion of the Judge to receive it.

The proof did sustain the indictment on the well known principle that every battery includes an assault. 4 Mod. 405; Co. Litt., 253.

*Munco* could not have shot *Lammert* with intent to commit murder without assaulting him with like intent.

We think the testimony was properly received. The accused had no reason to complain, as a conviction upon the indictment, by the express provision of the Statute, would have been a bar to the prosecution for the more aggravated offence of shooting with an intent to commit murder.

II. This brings us to the last bill of exceptions which was taken to the charge of the Judge to the jury.

The bill of exception presents the charge of the Judge to the jury in a com-posed manner, but we think, notwithstanding the qualifications given by the Judge, that he ought not to have charged "that although death did not ensue from the act, yet that the malice aforethought, was legally implied from the act as though death did ensue." This charge is erroneous, because it implies an opinion upon the act proven, which the Judge is now prohibited from giv-ing in criminal as well as civil cases. The jury are to judge of the intent from all of the surrounding circumstanses. As a general rule, men are supposed to intend the usual consequences of their acts. The man who wilfully discharges a loaded gun at another within striking distance, is presumed to intend to maim or kill. If his act of shooting is accompanied by deliberation, it is pre-sumed that he intended to commit murder. If he happen to be armed with a

gun, and he is set upon by armed men and he shoots in self defence, it is no offence at all, but an excusable act.

It is not necessary that it should be actually shown how the gun was loaded. This may be presumed from all the circumstances. It ought to appear that *Lammert* was within the range of the kind of gun used at the time the shooting took place, and if he were not, the offence was not committed, although the shooting was malicious.

The law of the case, or so much of the indictment as charges an assault with an intent to commit murder, was correctly embodied in the last point which the Judge charged, viz:

" That if the jury were of the opinion that had *Lammert* died of the wounds inflicted by the accused, that the accused would have been guilty of manslaughter and not of murder, then the accused should be acquitted."

But we have already observed that the indictment charges the offence of assaulting, by wilfully shooting at *Adam Lammert*, and if this appear, the indictment will be sustained, although it may not be proven that the assault was made with the intent to murder. 6 Ann. 289.

The judgment must be reversed, and a new trial awarded.

We remark, that should the accused be convicted under this indictment, he cannot be sentenced to a longer period, at hard labor, than two years.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be reversed, and that this cause be remanded to the lower court for a new trial, with instructions to be governed by the instructions herein contained, and otherwise proceed according to law; and that the opinion and decree of the court record be transmitted to the clerk of the Supreme Court at Monroe, according to the agreement of the parties on file.

SPOFFORD, J. The best evidence that the prisoner shot at *Adam Lammert*, would be that he hit him. The evidence of wounding might, therefore, have been admissible under the allegations of this extremely defective indictment.

The prisoner could not have been surprised by the testimony, for it was alleged that he "shot at *Lammert* with intent to murder him."

The evidence touching the wounds may have been so interwoven with the evidence of the alleged facts, that it was impossible to separate it.

I, Therefore, concur in the view that the evidence was admissible.

But I do not understand the 9th Section of the Act of March 14th, 1855, as introducing any new rule as to the competency of evidence in criminal trials. The ancient rule which has its foundation in one instinctive sense of justice, that what is not alleged, cannot be proved if the party accused object, is not, I think, in the slightest degree impaired by any thing contained in the Statute of March 14th, 1855.

The 9th Section contemplates a single state of facts with a double complexion, one of which would constitute an offence of one grade, and the other offence of another grade; then the evidence is admissible, under an indictment charging one of these offences only, and for the reason that it corresponds to the *allegata*. But because *the same facts* also constitute an offence of another grade, it shall not be cause for acquittal of the offence charged.

I think the change is made in the rule as to the admissibility of proof, and a party accused has still the right to object successfully to all evidence of matters not embraced or implied in the indictment as exhibited against him.

In other respects, I concur in the opinion and decree prepared by Mr. Chief Justice Merrick.