ODOM, Justice.
 

 The indictment in this case charges that on January 22, 1939, -Wince Rives, Wilbur Boyett, and Ferry Simpson did feloniously take, steal, and carry away three cows, the property of Jim Wright. The defendant Ferry Simpson, being a minor under 17 years of age, was released. Wilbur Boyett pleaded guilty and made a written statement implicating Wince Rives and was used as a witness against him. Rives was tried, convicted, and sentenced to hard labor. He appealed.
 

 The error of which he complains is disclosed by two bills of exception reserved during the progress of the trial. Both relate to the same point. The district attorney called a witness named Phil Balance and asked him whether he saw defendant “Sometime before January 22nd, 1939” (this being the date on which the cows were alleged to have been stolen). The witness answered that he did and said that Aubrey Cook was present at the time he met and had a conversation with defendant. He was then asked, “Please state to the jury what was said by him [the defendant] at that time.”
 

 Counsel for defendant objected to the introduction of evidence of what was said by defendant on that occasion, on the grounds that the State was attempting to
 
 *193
 
 prove the commission of a crime other than the one for which defendant was being prosecuted; that it had already been shown by the witness Aubrey Cook that the conversation inquired about related to cows belonging to Nelson’s Dairy and not to cows belonging to Jim Wright, which defendant was accused of stealing; that the testimony elicited was immaterial and not relevant to any issue involved in the present prosecution; that the State was attempting to prejudice the jury against the defendant by showing what defendant said to the witness during a conversation which took place some time prior to the date on which the alleged crime was committed and which was in no wise connected with or related to the crime charged in the indictment.
 

 The objection was overruled, and Bill of Exception No. 1 was reserved. The witness was then permitted to testify before the jury and said in substance that he was at the defendant’s house one evening when Aubrey Cook came by; that defendant asked them whether they wanted to make some easy money, and that they asked him how, and “He said to get three cows from Nelson’s Dairy and he would come along about 10:00 o’clock that night with his trailer. We told him we would not do it, turned him down.” The witness was then asked, “Is it your testimony that on that occasion he asked you all if you wanted to make a little easy money; you asked how; he told you by stealing some cows?” He answered, “Yes, sir.” He was then asked whether defendant proposed to them that they pen the cows at Nelson’s Dairy and tie them up and that he, defendant, would come by that night' and that the three of them would load the cows on defendant’s truck. The witness answered, “Yes, sir.”
 

 This witness did not say., nor does the record otherwise show, when this conversation took place, except that it was “Sometime before January 22nd, 1939”. But counsel for the State say in their brief that it took place about two months before January 22, 1939, the date on which it is alleged that defendant stole Jim Wright’s cows, and counsel for the defendant says in his brief that it took place in the latter part of November, 1938.
 

 The prosecuting attorney then called Aubrey Cook, who' was asked the same questions as were asked the witness Phil Balance about the conversation. Counsel for defendant urged the same objection, which was overruled, and Bill of Exception No. 2 was reserved.
 

 . Cook’s testimony relating to the conversation was' the same in substance as that of Balance, except that Cook says that, when defendant made his proposition, they told him to go to Hell.
 

 The trial judge stated his reasons for overruling defendant’s objection to this testimony in a per curiam, which reads as follows:
 

 “The testimony was admissible under Articles 445 and 446 of the Code of Criminal Procedure.
 

 “The purpose of the testimony was not to prove another crime. It does not show that another crime was committed. But it does show.his method and intention. It
 
 *195
 
 shows that he had a mind bent on doing mischief.”
 

 The purpose of the testimony clearly was to show that accused had, some 60 days prior to the date on which it is alleged in the indictment he committed the theft for which he was being prosecuted, intended and attempted to steal cows belonging to Nelson’s Dairy. He was prosecuted for stealing cows from Jim Wright, who had no connection with Nelson’s Dairy, so far as the record shows. In other words, the purpose was to show that accused had, on a prior occasion, intended and planned to steal other cows from another person.
 

 The judge ruled that such testimony was admissible to show accused’s “method and intention” and to show that “he had a mind bent on doing mischief”.
 

 The testimony was not admissible, under the circumstances disclosed, for either purpose. As to method, the record is barren of any evidence to show or even to indicate what method the defendant used in stealing Jim Wright’s cows, if he did steal them, nor are we enlightened on this point by the judge’s per curiam.
 

 And as to showing intent, the fact — if.it be-a fact — that accused intended in November, 1938, to steal cows from Nelson’s Dairy does not necessarily evidence an intent on his part to steal cows from another person two months later. An evil or felonious intent is an essential ingredient or element of the crime of larceny, and, in order to convict an accused person of that crime, the burden is upon the State to prove that the accused took and carried away the goods or chattels of another without his consent and that such taking and carrying away were done with felonious intent, fraudulently to appropriate the property. But, as relates to the element of intent in the crime of larceny, inference of such intent and fraudulent purpose must as a general rule arise out of the facts and circumstances surrounding the particular case under investigation.
 

 There are exceptions to the general rule, and whether exceptions should be recognized in any given case depends ordinarily upon the nature of the defense urged or indicated by the accused.
 

 The testimony objected to in this case was not offered in rebuttal. The witnesses were called by the district attorney for direct examination while the case was with the State in chief. There is nothing in the record to disclose or suggest what defense the accused urged, and the trial judge says nothing in his per curiam which throws light on that question. Taking the record as we find it, we must assume that the purpose of introducing this testimony was to prove the ingredient or element of intent as a primary proposition, by showing that on one isolated former occasion, in no way connected with the case on trial, the accused had intended and planned tó steal cattle from another person.
 

 In prosecutions for larceny or embezzlement, where the State proves, or the defendant admits, the taking and appropriation of the property of another without his consent, testimony offered by the defendant that he took and appropriated the property by mistake, by accident, or
 
 *197
 
 by misadventure, is always relevant and admissible to rebut the inference that the taking and appropriation were done with fraudulent intent. Similarly, in such cases, where it is proved or admitted that the taking and appropriation were knowingly done and the defense is that the accused had a legal right to take and appropriate the property (as for security or satisfaction of a debt or under the mistaken belief that the owner had consented to the taking and appropriation), testimony tending to show good faith on the part of the defendant is likewise admissible for the same purpose.
 

 In such cases, where such defenses are made, the State may, in order to show guilty knowledge and intent, introduce evidence of prior similar transactions on the part of the accused. A felonious intent may be inferred from the circumstances of the taking and appropriating of property without the owner’s consent. But this inference may be rebutted by defendant. He may show mistake or accident, or that the taking and appropriation were, according to his understanding, lawful. And, when that defense is urged, the State may introduce testimony that the defendant was in the habit of doing such acts as those for which he was being prosecuted, and thereby show that the defense urged was a mere subterfuge.
 

 But ordinarily, as an independent proposition in prosecutions of such offenses, the State must stand or fall upon facts and circumstances surrounding the particular case under investigation.
 

 As to the suggestion that the testimony was admissible in order to show that defendant “had a mind bent on doing mischief”, no further comment is necessary than to say that it is an elementary rule of criminal procedure that the State is not permitted to introduce in evidence the character of an accused unless and until the accused puts in evidence his character and thereby opens the door. At the time this testimony was introduced, the accused had not taken the stand and had offered no testimony at all. At that stage of the trial the State had no right to show by any kind of testimony that the accused “had a mind bent on doing mischief”.
 

 As stated by Wharton in his work on Criminal Evidence: “A man cannot be convicted of crime because he is a bad man generally or has committed other crimes for which he has not been punished.”
 

 In the case of State v. Montgomery, 170 La. 203, 127 So. 601, 602, one of the questions involved was whether, in a prosecution for robbery, the State was permitted to show that defendant had committed other similar crimes, and we said: “The state is not permitted to prove, in a criminal prosecution, that the defendant committed or attempted to commit another crime than that for which he is on trial, when such evidence is not relevant on any other theory than that one who commits one crime is prone to commit another.”
 

 The ruling in State v. Johnson, 38 La. Ann. 686, fits the present case like a glove. In that case the defendant was indicted for burglary and larceny. A witness called by the State stated in substance that the
 
 *199
 
 defendant had told him that he had committed another burglary at another time' and place and had taken a gold watch, which watch was offered in evidence by the State. Counsel for the accused objected to this testimony on the ground that same was irrelevant to the issue and “not pertinent to the crime charged”. The trial judge overruled the objection on the ground that the witness was detailing a confession of the accused which related to other burglaries and thefts committed about the same time, and that “The evidence was admitted to show intent of the accused in breaking and entering”.
 

 The accused was convicted and appealed. The verdict and sentence were set aside, this court saying:
 

 “The judge erroneously overruled the objections of the counsel for the accused, to the reception of this testimony on part of the State.
 

 “It is difficult to conceive in what way the commission of a burglary, at a different time and place from that charged in the indictment, by the accused, could interpret the latter; or in what way the subsequent larceny, by the accused, of a gold watch, from a person not named, could interpret the previous larceny of a pocketknife, the property of Joseph O. Toups. It was not proper to allow such evidence to be heard by jury, and the instructions of the trial judge were improper.
 

 “Such evidence could not affect the credibility of the accused because he was not a witness, and the truth or falsity of his statement was in no way involved.
 

 “The accused had not, upon his own motion, put his character in proof, and the State could not do so otherwise. The witness in question was suffered to testify as to matters that were wholly irrelevant to the main issue on trial- — -the guilt or innocence of the accused — and totally disconnected with the charge contained in the indictment.”
 

 In State v. Bates, 46 La.Ann. 849, 15 So. 204, 205, this court said: “The general rule is that, when a man is put upon trial for one offense, he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone, and that other offenses committed by him are wholly excluded.”
 

 This general rule prevails not only here but elsewhere, and is recognized by text writers. In the Bates case the court recognized that this general rule is subject to the exception that the introduction of collateral evidence of extraneous crimes is permissible to show intent, motive, and guilty knowledge, but the court said: “in order that this evidence be admissible at all, it must bear directly and materially upon, and have some connection with, the issue before the jury.”
 

 The court went on to say: “The general rule, however, is against the introduction of such evidence, and the exceptional circumstances which justify a departure from the rule should be clear and very convincing. This statement of the proposition shows that each case must, to a great extent, be passed upon in view of its own special facts.”
 

 
 *201
 
 The organ of the court then quoted the following from Rice on Evidence, Volume 3, Chapter 25, Section 153 et seq., and especially as to larceny in Chapter 42, Section 453: “The author, in section 157, says: ‘It is a dangerous species of evidence, not only because it requires a defendant to meet and explain other acts than those charged against him and for which he is on trial, but also because it may lead the jury to violate the great principle that a party is not to be convicted of one crime by proof that he is guilty of another.’ And in section 153 he says: ‘The indictment is all that the defendant is expected to come prepared to answer. Therefore, the introduction of another and extraneous crime is calculated to take the defendant by surprise, and to do him manifest injustice by creating a prejudice against his general character. * * * It would lead to convictions, upon the particular charge made, by proof of other acts in no way connected with it, and to uniting evidence of several offenses to produce conviction for a single one.’ ”
 

 In the case at bar, the testimony elicited by the State from the witnesses Balance and Cook was not to show that defendant had actually committed a similar crime on a different occasion, but to show that he had intended and attempted to do so but had failed. On principle the ruling in the Bates case and the ruling in many others like it are applicable here. The only difference is that, in the Bates case and the others, an attempt was made to prove the commission of another like crime. Here the State sought to prove an attempted crime.
 

 Wharton in his work on Criminal Evidence (11th Ed., Volume I, Section 344) says: “Several reasons prevail for the exclusion of evidence of independent, disconnected crimes.” He then states the general rule to be that: “When a person is put on trial for an offense, he is to be convicted, if at all, by evidence which shows that he is guilty of that offense and not by evidence showing him guilty of other offenses wholly unconnected with the one charged.”
 

 The following statement by the author in the same section is highly pertinent to the issue involved in the case at bar. He says: “A man cannot be convicted of crime because he is a bad man generally or has committed other crimes for which he has not been punished. Evidence of other crimes, when offered in chief, violates both the rule of policy which forbids the State initially to attack the character of the accused and the rule of policy that bad character may not be proved by particular acts. Moreover, the acT cused would not be given notice by the charges in the indictment as to what the evidence was to be as to such collateral crimes. The proof of the guilt of an oE fense not connected with the one for which the accused is being tried.finds the accused unprepared to meet it with evidence, leads the mind away from the issue to be determined and has a tendency to prejudice the minds of the triers against the accused and to predispose them to a belief in his guilt. Finally, the rule is universal that the evidence on a trial must be confined to the question in issue.”
 

 
 *203
 
 Counsel for the State cite in their brief the following cases in support of their theory that the testimony offered was admissible in this case: State v. Benjamin,
 
 7
 
 La.Ann. 47; State v. Munco, 12 La.Ann. 625; State v. Goodwin, 37 La.Ann. 713; State v. Anderson, 45 La.Ann. 651, 12 So. 737; State v. Fontenot, 48 La.Ann. 305, 19 So. 111; State v. Johnson, 111 La. 935, 36 So. 30.
 

 We have read these cases and find that the cases of Munco and Goodwin have no application. The other cited cases recognize the general rule that no evidence is admissible of other felonies committed by the prisoner than that charged in the indictment. But they recognize that there are exceptions to this general rule, one of the exceptions being that, where it becomes material to show the intent with which the act charged was done, evidence of another closely related crime is admissible if it tends to show the intent with which the crime charged was committed. But, when we look into those cases for the reason underlying the recognition of the exception, we find that the cases do not support the State’s contention in the' case at bar, which is that testimony showing that accused had committed other similar crimes is always admissible to show intent.
 

 In the Benjamin case, the defendant was indicted for inveigling, stealing, and carrying away a slave. There was another count in the indictment, charging the defendant with aiding the slave to run away from the service of her mistress. The State offered testimony to show that defendant had harbored the slave on his premises. This testimony was objected to on the ground that it “tends to establish another and distinct statutory offence, subject to a different punishment, and not to establish the crime charged against the accused”.
 

 This court held that such testimony was admissible, although it tended to establish the offense of harboring the slave. The theory on which the testimony was held to be admissible was that the fact of defendant’s having harbored the slave on his premises, at or about the same time he was accused of stealing the slave, tended to show that he intended to steal her. The slave harbored was the same slave that the defendant was accused of stealing. There was therefore an intimate connection and relationship, both as to time and as to the property involved, between the crime of harboring the slave and that of stealing her.
 

 In the Anderson case, Anderson and Blackstone were tried for murder. The State offered to prove the details of a difficulty between one of the accused and.the deceased on the day before the homicide. The defendant objected to the testimony on the ground that the details of a transaction on the day before could not be received in evidence, as it was a separate and distinct offense and “no part of the present transaction, and not a part of the res gestae”. [45 La.Ann. 651, 12 So. 738.] The objection was overruled on the ground that the purpose of the testimony was to prove that defendant and deceased had a difficulty on the day before, in which diffi
 
 *205
 
 culty Anderson threatened the deceased. “The details were allowed to show the threats and feeling between the parties.” The ruling of the trial court was approved on the ground, as stated by the court: “In the instant case the details of the difficulty were admitted to show the intent of the defendant. Threats against the deceased are always admissible to show malice.”
 

 In the Fontenot case, the defendant was indicted for murder. During the progress of the trial, a State’s witness said that the accused raised a stick just prior to the difficulty with deceased and attempted to strike another party. The defendant’s counsel objected to this statement on the ground that it tended to establish a different offense from that for which he was being prosecuted and tried. The trial judge declined to sustain the objection “because it was part of the res gestse, and offered as such; and not to prove an independent substantive offense, and could not be excluded, because it was so inseparably connected with the homicide that the facts of the one included the other”. [48 La.Ann. 305, 19 So. 112.]
 

 The court approved the ruling on the ground that “ ‘When an extraneous crime forms part of the res gestae, evidence of it is not excluded by the fact that it is extraneous.’ ”
 

 In the Johnson case, the defendants were charged with the crime of rape. The State offered evidence tending to prove that, on the night the alleged crime was charged to have been committed, the defendants broke the window of a house two miles distant from that of the prosecuting witness and entered the house through the window. The testimony was objected to on the ground that it proved a distinct crime not connected with that charged. Th'e trial judge overruled the objection on the ground that the two similar crimes were committed in the same vicinity, the court saying that “it was competent for the state to prove this collateral offense, to show that defendants were in the neighborhood on the night the offense charged was committed, to identify them as being engaged in committing offenses of the same character as that charged, and for the purpose of showing the intent of the parties in breaking and entering the house of a helpless woman and her daughter in the nighttime. * * * The evidence was introduced to show that the defendants were the persons who went to the house of the prosecutrix, to show that they were in the neighborhood on the night, going in the direction of the house of the prosecutrix”. [111 La. 935, 36 So. 31.]
 

 This court approved the ruling of the trial judge with this comment: “These reasons are sufficient,”
 

 In the case of State v. Patza, 3 La.Ann. 512, which is not cited but which is pertinent, the defendant was prosecuted for stabbing and thrusting with intent to commit murder, and the court held that testimony showing that defendant on a prior occasion had attempted to poison the prosecuting witness — a separate crime — was admissible to show malice, and, said the court, “for that purpose former grudges and concerted plans to do bodily harm to
 
 *207
 
 the person to whom the violence was offered, have been uniformly admitted”. The court went on to say, “And on an indictment for maliciously shooting, if it be questionable whether the act was done by accident or design, proof may be received that the prisoner, at another time, intentionally shot at the same person”.
 

 In State v. Mulholland, 16 La.Ann. 376, the accused was charged with the murder of one Somers, and, in his efforts to escape, wounded a man named Condon. The State offered to prove the wounding of Condon. This was objected to on the ground that it was a separate offense. The objection was overruled and the ruling was sustained, this court saying, “When the commission of both offences are closely linked or connected, as, for instance, when upon the consummation of the first, and whilst being hotly pursued, the prisoner, to avoid capture,- commits the second offence, —it is difficult to perceive why evidence of the whole transaction should not be legal, notwithstanding two distinct felonies have thus been perpetrated. Roscoe, Evid., p. 82.”
 

 A reading of the cases shows that in each instance where testimony of the commission of extraneous offenses by the accused was admitted, the separate offense had 'a direct bearing upon or some connection with, or threw some light upon, the issue before the jury. There is no doubt that, for the purpose of showing intent, the State may, under some circumstances, introduce testimony tending to show that the prisoner had committed other like crimes. But, for the testimony to be relevant, it must be shown that the extraneous crimes bear some relation to the main charge.
 

 In State v. Ward et al., 166 La. 806, 118 So. 26, 27, the defendants were charged with breaking and entering the store of J. N. Jones on March 10, 1928, with intent to steal the goods found therein. The State offered evidence to show that, some four months previous to that date, the defendants had burglarized Shelton’s store and had stolen certain goods. The trial judge admitted the testimony over the objection of counsel for defendants. They were convicted and appealed. The conviction and sentence were set aside, this court holding that testimony relating to the former offense was not admissible. We quoted with approval the following extract from Wharton’s Criminal Evidence, Volume I (10th Ed.), Section 36: “Where intent is material, the acts, declarations, and conduct of the accused are relevant to show that intent. Hence evidence of collateral offenses is admissible, on the trial of the main charge, to prove the intent. To be admissible as relevant,' such offenses need not be exactly concurrent; but if committed within such time, or show such relation to the main charge, as to make connection obvious, such offenses are admissible to show intent.”
 

 In passing on the case, we said that the burglary of Shelton’s store in November, 1927, and the burglary of Jones’ store on March 10, 1928, for which defendants were tried, “cannot be said to be parts of one entire transaction, as they are separate
 
 *209
 
 and independent crimes, committed against different persons at an interval of four months apart There is nothing in the record to show that these crimes are a part of a system. Nor are they so mutually connected or interdependent that the proof of one is not coherent without the evidence of the other.”
 

 In State v. Ard, 160 La. 906, 107 So. 617, the defendant was chárged with the crime of forging and uttering. The State offered testimony to show that the defendant was subsequently charged with the commission of a similar offense in another state. We said that there was nothing to show that there was any connection whatever between the two alleged offenses, and therefore the evidence was held to be inadmissible.
 

 In State v. Norphlis, 165 La. 893, 116 So. 374, the defendant was prosecuted for the larceny of a dress and several pairs of silk hose from Mrs. Jettie Timón. She was convicted of the larceny of the dress, and appealed.
 

 The verdict and sentence were set aside on the ground that the trial court permitted the introduction, over the objection of defendant’s counsel, of evidence “tending to prove that the defendant had stolen other articles, namely, a dress marked $29.50, two pairs of underwear, and some silk stockings”. The court said that the question presented was whether, in the prosecution of the defendant on a charge of having stolen the $32 dress in the store of Mrs. Timón, it was permissible for the ■prosecution to introduce evidence tending to prove that another crime was committed by defendant, by showing that other property formerly belonging to Mrs. Timón was found in defendant’s residence. Jt was held that such testimony was not admissible. Prior jurisprudence was reviewed at length, and the case of State v. Bates, 46 La.Ann. 849, 15 So. 204, was reviewed in detail.
 

 In the more recent case of State v. Brown, 185 La. 1023, 171 So. 433, the jurisprudence relating to this point was reviewed at length, and it was held that testimony showing that the defendant had been previously convicted of a similar offense was inadmissible.
 

 In the case at bar, the trial judge thought the testimony was admissible under Articles 445 and 446 of the Code of Criminal Procedure. Article 445 of the Code reads as follows: “In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the .transaction.”
 

 This is but a restatement of the general rule which this and other courts have always recognized. As an abstract rule of procedure, no fault can be found with the codal article. But it is certain, we think, that neither the writers of the Code nor the Legislature which adopted it intended to upset the established jurisprudence of the State, which is, as stated in the Bates case, that, in order that evidence of extraneous crimes may be admitted to show intent, “it must bear directly and materially
 
 *211
 
 upon, and have some connection with, the issue before the jury”.
 

 The Code was adopted in 1926. Since its adoption we have had occasion to discuss the point involved in at least four cases, and in not one of them was Article 445 of the Code mentioned. We refer to State v. Ward, 166 La. 806, 118 So. 26; State v. Ard, 160 La. 906, 107 So. 617; State v. Norphlis, 165 La. 893, 116 So. 374, and State v. Brown, 185 La. 1023, 171 So. 433. If it had been thought that Article 445 of the Code changed established rules of procedure in cases of this kind, it is reasonable to assume that the court would have mentioned that article.
 

 The same may be said with reference to Article 446 of the Code.
 

 For the reasons assigned, the verdict and sentence appealed from are set aside, and it is ordered that the case be remanded for a new trial.