157 So.2d 728 (1963)
245 La. 475
STATE of Louisiana
v.
Timothy MORRIS.
No. 46657.
Supreme Court of Louisiana.
November 12, 1963.
Concurring Opinion December 10, 1963.
*729 Nathan A. Levy, Jr., Morgan City, John E. Coleman, Jr., Franklin, for defendant-appellant.
Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Knowles M. Tucker, Dist. Atty., Michael J. McNulty, Jr., Asst. Dist. Atty., for plaintiff-appellee.
HAMITER, Justice.
Timothy Morris was convicted, and thereafter sentenced to death, for the murder of Lee Ethel Small in a barroom located in the City of Franklin. On this appeal he is relying on four bills of exceptions for reversal.
Bill Number 1 was reserved to the overruling of a motion for a change of venue. Anent this bill the record discloses that the alleged crime was committed May 27, 1962, and that the accused was tried twice therefor. The first trial occurred on September 24 and 25, 1962, but it resulted in a mistrial. Immediately, the case was fixed to be tried anew on October 29, 1962.
On the latter date, while the prospective jurors were in attendance at court and ready for the commencement of the second trial (in fact, they had been sworn and examined relative to their general qualifications), the motion for change of venue was filed. The judge overruled the motion, he stating that it "has not been made timely".
In this court counsel for the defense make the following complaint: "* * * the defense moved for a change of venue on the grounds that the adverse publicity of the defendant's first trial and the charges and accusations made by the jury foreman, judge and district attorney at the conclusion of the first trial, intimidated and frightened the Negroes in the community to such an extent that they would not serve on the jury and that such intimidation resulted in a systematic exclusion of Negroes from the jury of the second trial. The defense was not permitted to introduce evidence to substantiate this position."
Change of venue is provided for in LRS 15:289 et seq., and from a mere reading of the provisions it is clear that an application therefor must be filed as soon as possible after the discovery of the alleged prejudice or other cause (see particularly Sections 290 and 292). Here, the publicity forming the basis of the above complaint was primarily through a newspaper published September 27, 1962more than a month before the date fixed for the second trial. Yet the accused did not file his motion within that interval, as he might and could have done. We think that the judge's ruling was correct.
Since they are interrelated, bills of exceptions Numbers 2 and 3 will be discussed together. These bills were reserved when the judge overruled defense objections to the testimony (and to certain offerings) of Lt. Edward Lawson of the New Orleans *730 Police Department which showed that during the year 1955 the accused had murdered a man in a barroom of that city and, on a plea of guilty without capital punishment, received a sentence of life imprisonment. The objections were grounded on the propositions that (1) the prior crime was separate and independent and (2) the testimony of the witness was hearsay. In so ruling the judge stated, among other things, that: "This evidence is admissible * * * to show guilt or knowledge and intent of the accused. * * *"
The bills are without merit. This accused was charged under the first paragraph of LRS 14:30 which recites:
"Murder is the killing of a human being,
"(1) When the offender has a specific intent to kill or to inflict great bodily harm; * * *" Accordingly, it was necessary for the state to show an intent to kill, and for that purpose the evidence of Lt. Lawson respecting a prior similar crime was relevant and admissible. See LRS 15:445 and 446, State v. Cupit, 189 La. 509, 179 So. 837, State v. Childers et al., 196 La. 554, 199 So. 640, State v. Johnson, 228 La. 317, 82 So.2d 24, State v. Wagner, 229 La. 223, 85 So.2d 272, and State v. Allen, 243 La. 698, 146 So.2d 407. This is particularly true in view of the accused's position throughout the trial that he was guilty only of manslaughtera crime which is defined partially as: "(1) A homicide which would be murder under subdivision (1) of Article 30 (murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. * * *; or (2) A homicide committed, without any intent to cause death or great bodily harm." Here, moreover, the shooting occurred during a violent argument between the decedent and the accused (standing only a few feet apart) and while the former held a beer bottle by its neck over her right shoulder as if prepared to strike the latter.
We agree also that Lt. Lawson was not giving hearsay testimony. At the trial of the former crime the accused entered a plea of guilty without capital punishment, and the witness was in the court room when such was done.
The fourth bill was taken to the admission into evidence, and their projection onto a screen, of fifteen photographic color slides which showed the body of the deceased immediately prior to and while undergoing an autopsy. Before their introduction the state, without objection from defendant, had offered and filed two black and white photographs (exhibits 9 and 10) of decedent's body which clearly disclosed the five bullet wounds and their location (four were in the abdomen and one in the right leg). Furthermore, the coroner had already testified very definitely that death resulted from the gun shot wounds in the abdomen, and hence its cause was not a contested issue. In fact, in an opening statement, defense counsel had declared to the jury that the "killing" had resulted in the manner related by the district attorney. A full confession had also been introduced without objection. The sole issue in the case then was whether the killing was intentional or whether it was done in the heat of passion, the defense contending for the latter and asking for a penalty less than the death sentence.
Most of the photographic color slides are indeed gruesome and ghastly. The first two are virtually a reproduction, in color, of the previously introduced black and white pictures. They are merely cumulative and not particularly objectionable. The third was taken, while looking at the body from the head downward, upon the commencement of the autopsy. However, the fourth and fifth show the lengthy incision of the autopsy, the laying bare of the inner portions of the body, and the suction apparatus evacuating some of the bloody contents of the body cavity. The remaining pictures are increasingly grotesque and revolting. In many of them the hands of the *731 coroner and his assistant are shown holding various organs within the bloody opening.
Of course, we have on numerous occasions stated that the mere fact that photographs are gruesome and tend to prejudice the jury does not render them inadmissible in evidence if they are otherwise admissible. See State v. Johnson, 198 La. 195, 3 So.2d 556, State v. Ross, 217 La. 837, 47 So.2d 559, State v. Solomon, 222 La. 269, 62 So.2d 481, State v. Eubanks, 240 La. 552, 124 So.2d 543, and State v. Collins, 242 La. 704, 138 So.2d 546. We think, however, that this rule is subject to the reservation noted in the vast majority of the common law jurisdictions and expressed in 23 C.J.S. 353, verbo Criminal Law § 852(1)c: "As a general rule, where photographs are otherwise properly admitted, it is not a valid objection to their admissibility that they tend to prejudice the jury. Ordinarily photographs are not inadmissible merely because they bring vividly to jurors the details of a shocking crime or tend to arouse passion or prejudice, as in the case of unpleasant, gruesome, or horrifying photographs. The test of admissibility in such cases is whether the probative value of the photographs outweighs their probable prejudicial effect. Accordingly, photographs should be excluded where their logical relevancy will unquestionably be overwhelmed by the inherently prejudicial nature of the particular picture; and photographs which are calculated to arouse the sympathies or prejudices of the jury are properly excluded if they are entirely irrelevant or not substantially necessary to show material facts or conditions." (Emphasis ours)
This reservation is particularly appropriate to cases involving pictures of the autopsy proceeding when, as in the instant prosecution, such pictures can have no real evidentiary value. True, it was suggested by the coroner that the pictures of the hands holding up the various organs in the body cavity demonstrated that they were healthy organs and that death did not result from any disease thereof. But, obviously, the average layman would not know a healthy organ from an unhealthy one and the showing of the pictures would mean nothing to him. He would be more informed as to the condition of the organs if the coroner merely testified that he had examined all of them and that they were not diseased.
There are some cases in the other juristions in which pictures taken during the autopsy procedure were held to be admissible. But the circumstances surrounding their admission were not nearly so similar to the circumstances here as were those in other cases where the introduction was held to be reversible error. See especially Kiefer v. State, 239 Ind. 103, 153 N.E.2d 899; People v. Redston, 139 Cal.App.2d 485, 293 P.2d 880; and Oxendine v. State, 335 P.2d 940 (Okla.Cr.). See also People v. Jackson, 9 Ill.2d 484, 138 N.E.2d 528; State v. Bischert, 131 Mont. 152, 308 P.2d 969; Archina v. People, 135 Colo. 8, 307 P.2d 1083 (Colo.); and McKee v. State, 31 So.2d 656 (Ala.).
Particularly applicable to the instant case are the following observations of the Oklahoma court in Oxendine v. State, supra: "It is apparent from the cases heretofore cited that if the pictures of a homicide victim made subsequent to his death are gruesome or ghastly, and carry danger of prejudice, they are inadmissible unless they are relevant to some material issue and would reasonably assist the jury in the determination of the defendant's guilt, and this relevancy must outweigh the danger that the jury would substitute emotion for reason as a basis of their verdict.
"In the case at bar there was no reason for the introduction of the colored photo slides. There was no issue nor controversy as to the cause of death. The defendants admitted the crime in intricate detail. The photos could not possibly lend assistance in the determination of defendant's guilt. It was admitted. Had there been a conflict as to the shooting or cause of death or location of the wounds, or an issue to which the *732 photos were relevant, then and in that event, they would have been admissible had they been taken prior to the performance of the autopsy. But the autopsy was not the handiwork of the defendant and could, under the circumstances, serve no other purpose than to arouse the emotions and passion of the jury. This court feels that the photos were wholly inadmissible in the form presented and their admission was an abuse of the trial court's discretion. If the photographs had been limited to the area showing the points of entrance and possible egress of the bullets without showing the gruesome incisions incident to the autopsy, the action of the court in the admission of such cumulative evidence could not be held to be reversible error, but the pictures of the nude body of this young woman showing the stated visual results of the autopsy can not help but shock the viewer. The whole procedure seems to have been so unnecessary and was highly prejudicial and forces a reversal."
In its brief to this court in the instant case the state does not contend that the introduction of the vast majority of the colored pictures was not prejudicial to the defendant. It argues merely that they were admissible despite any possible prejudicial effect.
Because of the nature of such photographs, as we have briefly described them above, we cannot help but feel that they were revolting to the members of the jury and could well have influenced them in arriving at a verdict which carried a mandatory death sentence. Without them, in view of the above described violent argument and the threatening beer bottle which the decedent held high, it is quite possible that a verdict without capital punishment would have been returned. They, unquestionably, are in such form as to be highly shocking and emotionally disturbing to the mind of the average individual and are in-herently prejudicial. It was reversible error, therefore, to permit their introduction.
For the reasons assigned the conviction and sentence of the accused are reversed and set aside, and the case is remanded to the district court for a new trial.
HAWTHORNE and SUMMERS, JJ., concur with written reasons.
HAWTHORNE, Justice (concurring).
Bills of Exception Nos. 2 and 3 were taken when the trial judge overruled the defense's objection to the testimony of Lieutenant Edward Lawson, a police officer, and permitted the witness to testify as to a previous murder committed by the accused for which he pleaded guilty without capital punishment and was sentenced to life imprisonment. The majority holds that the ruling of the trial judge was correct, but as to this holding I have serious doubt. This ruling permits the admission of evidence of a separate and independent crime committed by the accused seven years before the offense for which he was here tried, and seems to be in conflict with the holding of this court in State v. Rives, 193 La. 186, 190 So. 374, and the numerous authorities there cited, particularly State v. Brown, 185 La. 1023, 171 So. 433; State v. Bates, 46 La.Ann. 849, 15 So. 204, and State v. Johnson, 38 La.Ann. 686.
I am in full accord, however, with the views of the majority on the other bills discussed in the opinion, and I agree that the accused is entitled to have his conviction and sentence set aside and a new trial granted under the holding of the court as to Bill No. 4.
SUMMERS, Justice (concurring).
I join in the concurring opinion of Mr. Justice HAWTHORNE for the reasons he has assigned.