[Nos. 29854, 29860. Department One. July 13, 1946.]

THE STATE OF WASHINGTON, *Respondent,* v. ROGER B. PAYNE *et al., Appellants.*[1]

[1]Reported in 171 P. (2d) 227.

*John C. Richards* and *James Tynan,* for appellants.

*C. P. Brownlee* and *Arnold R. Zemple,* for respondent.

MALLERY, J.—Elizabeth Ann Crowe was a country-reared young woman, twenty-one years of age, who had joined the Waves in March, 1944, and was stationed at the time of her death at Sun Valley, Idaho, at which time she was four and one-half months pregnant. She was in excellent health, and neither she nor her child required an abortion for reasons of health or safety.

Deceased was in Everett, Washington, on Saturday, September 8, 1945, at which time and place she made an appointment by phone with appellant Payne, to whom she made known her condition. She attempted to phone her parents in McMinnville, Oregon, for money, and on Sunday, September 9, 1945, she went to McMinnville, told her parents of her intention to have an abortion, secured one hundred fifty dollars she had left with them, and returned to Everett, Tuesday, September 11, 1945.

She went directly to appellant Payne's office at 2813 Rockefeller avenue, Everett, Washington, in a taxicab at eight a. m. At about 8:45 a. m. that same morning, deceased was seen at the bus depot in Everett. She took her luggage, a large suitcase, in a taxicab to the Elk hotel, which is about two city blocks from appellant Payne's office. She engaged a room at this hotel, unpacked her suitcase, and took a uniform across the street to the cleaners. She returned to the hotel and left again about 9:45 a. m. She was next seen at

appellant's office. According to appellant Brown, this was at about 12:30 p. m. Only the appellants were in the office that day, it being the other doctor's day off. Both appellants were present when the girl arrived. Appellant Brown removed all her clothing except her slip.

Appellant Payne testified that he was a drugless physician, a chiropractor, a sinopractor, and a dentist, and could give "any type of anesthetic pertaining to the case that we are treating in gynecology and obstetrics." Drugs were administered to deceased. She was given ergot and ergotrate. Appellant Payne injected evipol, an anesthetic, into the vein in the right arm at the elbow. Appellant Payne also testified that he had rectal instruments, including a speculum and a dilator, and an operating or examination table in his office.

Elizabeth Ann Crowe died in appellants' office at 2813 Rockefeller avenue, Everett, Snohomish county, Washington, on the afternoon of September 11, 1945. Just before she passed away, appellant Payne called in the pulmotor squad of the city fire department, but without avail. Deceased never regained consciousness. Later, appellant Payne called in the undertaker and filed a death certificate giving the cause of death as coronary thrombosis, due to colon injuries.

An autopsy was performed on the body of Elizabeth Ann Crowe on September 13, 1945, by Dr. Gale E. Wilson, autopsy surgeon of King county, Washington, in the presence of two other surgeons, who were of the opinion that she died as a result of collapse and shock resulting from hemorrhage and perforation of the bowel, perforation of the uterus and rupture of the cervix, incident to a very crude attempt at abortion.

Dr. Willis corroborated Dr. Wilson and Dr. Wagner and gave his opinion that a person receiving such multiple injuries as observed at the autopsy could not have moved about or walked any distance afterwards.

Appellant had the assistance of a medical expert, Dr. Copps, who also participated as counsel in the trial. Dr. Copps testified that, in his opinion, with the injuries described by the state's witnesses, it was *possible* but not

*probable* that the deceased could get up and walk after such an operation, and that the injuries were not self-inflicted.

The appellants were informed against jointly as principals in an information in two counts, in the language of the pertinent statutes for manslaughter by abortion (Rem. Rev. Stat., § 2397 [P.P.C. § 117-15]) and abortion (Rem. Rev. Stat., § 2448 [P.P.C. § 113-1]).

This appeal is from judgments based upon the jury verdicts of guilty as to both on each count.

We will first consider the appeal of appellant Payne. The theory of his defense is that he did not attempt to perform an abortion; that, when the deceased called at the clinic, she was in a fainting condition and that he took her in and placed her on a bed in one of the rooms; that he busied himself doing all he could to relieve the pain of the deceased and otherwise render assistance. He does not dispute that an abortion was attempted, but he denies that he did it, the inference being that it was performed elsewhere by someone unknown.

▮ He urges that the court erred in denying to his counsel the right to examine, prior to trial, the state's autopsy report of Dr. Wilson. We believe this has been very well answered by this court in *State v. Clark,* 21 Wn. (2d) 774, 153 P. (2d) 297, in which we said:

"A prosecuting attorney is under no obligation to submit any evidence he has in his possession to counsel for a person charged with a crime. *State v. Payne,* 10 Wash. 545, 39 Pac. 157. The state is not required to submit its evidence to counsel for the accused. The accused is not, as a matter of right, entitled to have for inspection before trial evidence which is in possession of the prosecution. Such matter is peculiarly within the trial court's discretion, with which we will interfere only when there has been a manifest abuse of discretion. *State v. Allen,* 128 Wash. 217, 222 Pac. 502; *State v. Morrison,* 175 Wash. 656, 27 P. (2d) 1065; *State v. Ingels,* 4 Wn. (2d) 676, 104 P. (2d) 944."

No inquest was held, no coroner's report filed, no public record made. Appellants' counsel had a list of state's witnesses as required by law, including the names of Dr. Wilson and Dr. Wagner, at the time the case was set for trial. When

the witnesses appeared on the stand, the court permitted appellants to inspect Dr. Wilson's written notes and findings for purposes of cross-examination, whereupon appellants offered them in evidence as defendants' exhibits 2 and 3. They were allowed to make a copy of these exhibits and to recall Dr. Wilson at a later time for further cross-examination. Inasmuch as the court granted this request during the process of the trial, we see nothing prejudicial to the appellants, and they have pointed out none in particular.

■ He next contends that the court erred in ordering a special venire to try only this case when there was a jury in regular attendance, and also in excluding the members of the regular jury panel from being chosen as jurors by excusing the entire regular panel. This was done because word of tampering with the regular panel in connection with this case had come to the court's attention.

It is his contention that the statutes contemplate the selection by chance from the body of the county of a qualified number of persons to attend upon the court as jurors for a particular term. (Rem. Rev. Stat., § 92 [P.P.C. § 72-7].) That, if this number be insufficient, the judge may order the clerk to draw from the jury list such additional names as he may consider necessary. (Rem. Rev. Stat., § 99 [P.P.C. § 72-25].) That, if it appeared, upon their *voir dire*, that any of the jurors on the regular panel had been approached by any person attempting to discuss the case with them, such persons could have been challenged for cause one by one. What is objected to is not the calling of the additional jurors, but the excusing of the entire previous panel.

We said in *State v. Phillips*, 65 Wash. 324, 118 Pac. 43:

"It does not appear that a fair and impartial jury was not secured. The appellant had no vested right in any particular juror.

" 'No party can acquire a vested right to have a particular member of the panel sit upon the trial of his cause until he has been accepted and sworn. It is enough that it appear that his cause has been tried by an impartial jury. It is no ground of exception that, against his objection, a juror was rejected by the court upon insufficient grounds, unless through rejecting qualified persons, the necessity of accept-

ing *others* not qualified has been purposely created. Thus, in the process of impaneling, no party is entitled, as of right, to have the *first juror* sit who has the statutory qualifications; though there are authorities to the contrary, chiefly based on exaggerated views of the rights of the accused in criminal trials. But this is on principle quite untenable; since, if the prisoner has been tried by an impartial jury, it would be nonsense to grant a new trial or a *venire de novo* upon this ground, in order that he might be again tried by another impartial jury.' 1 Thompson, Trials, § 120."

In *Roche Fruit Co. v. Northern Pac. R. Co.*, 18 Wn. (2d) 484, 139 P. (2d) 714, this court held that a statute relative to the jury panel is directory only and need be only substantially complied with to the end that a fair and impartial trial may be had.

Since a party tried by properly drawn jurors is not prejudiced by the excuse of other jurors, and since the method of securing a fair and impartial trial used by the court was not inappropriate to that end, we find no error in the instant case.

■■ He contends that the court erred in permitting photographs of gruesome objects to go to the jury.

A complete answer to this assignment is that no objection was made to the admission in evidence of the pictures in question. In any event, the admissibility of pictures shown to be competent, relevant, and material, is beyond controversy. A qualification of the rule based upon degrees of unpleasantness would produce nothing but confusion in the law.

■■ He contends that the court erred in permitting clothing worn by the deceased to go to the jury, when the same had no probative force and could only have been designed to create prejudice.

Since his contention was that the deceased had received all the multiple injuries revealed by the autopsy before coming to his place of business, it was important that the jury have the information as to her appearance and how she was dressed when she appeared at their office. The fact that there was no blood on the clothing would have a bearing on appellants' defense. Furthermore, the general rule is that

the clothing of the parties at the time of the occasion in question is admissible. *State v. Drummond,* 70 Wash. 260, 126 Pac. 541; *State v. Clark,* 21 Wn. (2d) 774, 153 P. (2d) 297.

 He contends that the court erred in giving instructions which were vague and confusing, in that they left the jury to find that the deceased came to her death through the use of an instrument or instruments, when the statute provides that the instrument or instruments must be used for the purpose of producing a miscarriage. His objection runs to the court's instructions Nos. 4, 5, 6, 7, and 8. No exceptions were taken or entered to the giving of these instructions, as required by Rule 10 of Rules of Practice, 18 Wn. (2d) 39a. The assignment of error will not be considered.

Appellant Payne's assignments 8 and 9 contend that the court erred in permitting declarations of the deceased to be used as proof of the crime charged, and not merely of the intent and purpose of the deceased in going upon a journey, and in admitting testimony of telephone conversations of the deceased with her parents asking for money for the purpose of having an abortion performed.

No objection was made to the testimony of the deceased's father. It will therefore not be considered.

 The testimony by the mother of the deceased that was objected to is:

"Q. Do you recall the last time you saw her? A. Yes. Q. When was that? A. On September the 10th, about a quarter 'til three. Q. Were you present when she told your husband about Everett and what she was doing up there? A. I was. Q. And what did she say to him? A. She said she wanted to come up to Everett; she had already seen the doctor and he promised to do the work and she wanted to come up here and have it done. MR. RICHARDS: I am objecting to all this. . . . Q. Did your daughter, Betty, ever at any time ask you to forward some money to her at Everett? A. Yes, she phoned from Spokane on Friday and asked me if I would please wire her $150.00, taken from her bonds which were hers that I was keeping, and wire it to Everett Saturday morning. Q. When was that? A. That was Friday evening, September the 7th. Q. And did you send her the money? A. I did not. . . . Q. Before she came that Sunday, did you have a telephone conversation

with her? A. Yes, I did. She phoned from Everett, calling me at my home, Sunday after dinner. Q. What was this conversation concerning? MR. RICHARDS: Wait a minute. I object to that as incompetent, irrelevant and immaterial, and hearsay. . . . A. She called on the phone and wanted me to send her up $150.00."

This testimony was, of course, hearsay; but it was admitted to show the purpose of the deceased in going to Everett.

The exception to the hearsay rule we refer to was first laid down in *State v. Power*, 24 Wash. 34, 63 Pac. 1112. There the question was discussed by the court in the following language:

"It is next contended that the court erred in admitting certain testimony. It appeared that the deceased resided near Rathdrum, in the state of Idaho, and that immediately preceding the time of her meeting with the defendant she left her home and went to Spokane, where the defendant resided; that while preparing for her journey she had a conversation with her sister relative to the purpose of her going. The sister was examined as a witness on behalf of the state, in the course of which she was asked the following question: 'I will ask you if your sister, Cora Reinhart, made any statement to you at the time she was in the act of going and preparing to go to Spokane from Rathdrum, where she was going, and her purpose in going.' This was objected to by the appellant as incompetent, irrelevant and immaterial. The court overruled the objection, and the witness answered: 'She said she was in trouble, and was going to Spokane to be treated by Dr. Power.' It is urged here that this testimony was hearsay, not part of the *res gestae,* and highly prejudicial to the defendant. The learned trial judge did not admit the testimony generally, nor as part of the *res gestae* of the main transaction. When ruling upon the objection he distinctly and clearly stated in the presence of the jury that it was competent only to explain the purpose of the deceased in leaving home, and as characterizing her act of going, and that he admitted it as explanatory of the nature, character and object of that act. As thus limited, we think the evidence was properly admitted. It was certainly competent for the state to prove that the defendant left her home to go to Spokane, and that she there sought the defendant and placed herself under his treatment. The prepa-

ration she made for going, her condition of health at that time, and her conduct and demeanor, were likewise matters properly admissible in evidence, as a part of the history of the case and necessary to its general understanding. On the same principle, her declarations made at the time she was preparing for the journey could be shown. They were in the nature of verbal acts, explanatory of what she was doing and of her object and purpose, and are part of the *res gestae* of this particular part of the entire transaction."

The court instructed the jury to consider the testimony in question only as to the purpose of the trip in instruction No. 10.

"You are instructed that the evidence which has been introduced in this case regarding the purpose of Elizabeth Ann Crowe's trips to Everett, and any evidence as to any statements Elizabeth Ann Crowe may have made in that regard, can only be considered by you in connection with her reason in doing so and as characterizing her acts of going and as explanatory of the nature, character and object thereof, but such is not evidence that the defendants actually committed an abortion or had engaged to do it or that the defendants actually caused the death of Elizabeth Ann Crowe."

The admission of the testimony was not error.

■ Appellant Payne contends the court erred in holding that parents supplying money for an abortion are not accomplices, and in refusing to give appellants' requested instruction upon the subject of accomplices.

As to this assignment, it is sufficient to say that an examination of the entire record does not reveal anything sufficient to have constituted the parents as accomplices. The money belonged to the deceased. She merely told them her purpose in making the trip. The instruction was properly refused.

■ His remaining assignments contend the court erred in denying his motions for a continuance, to quash the special jury panel, for a directed verdict, for a new trial, for judgment n.o.v., and in overruling the challenge to the sufficiency of the evidence. They are without merit.

As to appellant Payne, the judgment is affirmed.

 As to the appeal of the appellant Brown, the challenge to the sufficiency of the evidence to sustain her conviction raises a close and difficult question. The trial court also found it difficult and took it under advisement.

The court very well stated the problem in his memorandum ruling on the challenge to the sufficiency of the evidence to sustain the verdict. We quote in part:

"There are only two possible views to take of the matter as far as Mrs. Brown is concerned. One is that she actively and knowingly assisted in the abortion or that she was present at the place without any knowledge that an abortion was being committed.

"I attempted in Instruction No. 6 to make it clear to the jury that in order to convict, it must be proven beyond a reasonable doubt that Mrs. Brown had the unlawful intent required by the law and knowledge that a crime was being committed and knowingly aided, assisted and abetted in the commission of the crime."

An examination of the entire record reveals that the things appellant Brown did were routine and innocent in themselves, unless, as the trial court accurately pointed out, they were done with guilty knowledge that Dr. Payne was in the process of performing an abortion. There is no evidence that she saw any part of such an operation.

Touching the question of guilty knowledge, we again quote from the court's memorandum ruling:

"Defendant Brown saw the deceased, Elizabeth Ann Crowe, on September 8, 1945, at which time she came to the office and asked to see Dr. Payne. On that date defendant Brown ascertained that Elizabeth Ann Crowe was soliciting the performance of an abortion by Dr. Payne for she states in Exhibit 'M,' 'after she had left, Dr. Payne said she was pregnant and too far along and that he would not touch her for anything in the world.' About twelve-thirty p. m. on September 11, 1945, said Elizabeth Ann Crowe returned to the office and the defendant Brown was there almost continuously, from that time until the time Miss Crowe died.

. . .

"It has been suggested that the acts of an office assistant in a doctor's office might be innocently done without any knowledge of any unlawful act or intent on the part of the doctor. This is, of course, true, but the jury were fully

warranted in believing that anything Mrs. Brown did was done with guilty knowledge because she knew of Miss Crowe's purpose in coming to the office."

We do not think that knowing Miss Crowe's purpose is sufficient. To bring the necessary guilty knowledge home ·to appellant Brown, she must have known that Dr. Payne's purpose was to commit an abortion. There is nothing in the record to bring Payne's purpose home to appellant Brown other than her knowledge of the deceased's purpose. Dr. Payne's words denied such a purpose on his part. Was the deceased's purpose plus the presence of Payne and herself necessarily conclusive upon appellant Brown as to Payne's purpose? It is a very close question. The rule with regard to circumstantial evidence is that all the circumstances relied upon must be proven beyond a reasonable doubt. They must all be consistent with each other and with the guilt of the defendant, and they must be inconsistent with any reasonable hypothesis of innocence. Is such an hypothesis unreasonable in this case? We think not.

Accordingly, the judgment as to appellant Brown is reversed.

BEALS, C. J., MILLARD, STEINERT, and SIMPSON, JJ., concur.

### ON REHEARING.

[*En Banc.* December 27, 1946.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adhere to the Departmental opinion heretofore filed herein.

CONNELLY, J. (dissenting)—I dissent for the reason that I feel that the "verbal acts" rule, approved in *State v. Power,* 24 Wash. 34, 63 Pac. 1112, as permitting testimony explanatory of the condition of the deceased, her destination, and her appointment with a physician, has been unduly extended in this case to include pure hearsay. The deceased girl's mother was permitted to testify, over appellant's objection, to a·conversation had with the daughter on the day preceding her death. The portion of her testimony which I question is:

"A. She said she wanted to come up to Everett; she had already seen the doctor *and he promised to do the work* and she wanted to come up here and have it done." (Italics mine.)

No physician, accused by the mother of a deceased girl who has died from the effects of an abortion, can ever meet this type of testimony or escape its consequences. To my mind, it falls squarely within the hearsay rule and within the scope of every reason recognized by ancient and modern jurisprudence upon which the rule is grounded.

MILLARD, C. J., and SIMPSON, J., concur with CONNELLY, J.

[1]Reported in 171 P. (2d) 217.