The defendant was found guilty of illegal possession of narcotics and as a multiple offender was sentenced to imprisonment in the State Penitentiary at hard labor for the balance of his natural life. He has appealed to this Court from his conviction and sentence.

The case presents nothing for our review, there being no bills of exceptions filed or perfected and no error patent on the face of the record. State v. Phillips, 209 La. 194, 24 So.2d 374.

For the reasons assigned, the conviction and sentence are affirmed.

62 So.2d 481

**STATE v. SOLOMON.**

No. 41035.

Dec. 15, 1952.

Rehearing Denied Jan. 12, 1953.

Edgar Corey, New Orleans, for defendant-appellant.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Severn T. Darden, Dist. Atty., James P. Screen, Asst. Dist. Atty., and George J. Gulotta, Executive Asst. Dist. Atty., New Orleans, for appellee.

McCALEB, Justice.

John Solomon, a Negro, having been convicted of the murder of William Street, Sr., a white man, and sentenced to death for the crime, prosecutes this appeal. During his trial he reserved 20 bills of exceptions. Of these, he has abandoned Bills Nos. 1, 2, 4, 5, 6, 13, 15, 16, 19 and 20. He is relying on the others for a reversal of his conviction. The facts of the case, insofar as pertinent to a consideration of the bills, are as follows:

Street, the decedent, was Chief Engineer and appellant the Fireman on the Tugboat "Robert W. Wilmot" which operates in the Mississippi River at New Orleans and vicinity. On the evening of January 5th, 1951, the boat docked at the Bisso Walnut Street landing and all members of the crew disembarked. Later that night the decedent returned to the boat, went to his cabin and retired. While he was sleeping, appellant entered the cabin armed with a piece of iron with which he assaulted decedent by striking him on the head until he was unconscious. Immediately after the battery, appellant fetched a sea bag or sack, stuffed the body therein, weighted it with a large iron shackle and cast it overboard into the river where the depth of the water is about 60 feet. The motive for the murder was revenge (appellant stated in one of his confessions that decedent treated him badly) and robbery (he extracted $50 in currency and a pistol from his victim at the time of the killing).

As soon as the disappearance of decedent was discovered, an intensive investigation of his whereabouts was made. Appellant was taken into custody on January 6th, 1951 and questioned about the crime. On January 10th, while still under detention, appellant telephoned his landlady, requested that she contact his mother for help and advised her that he had some money in a cement bag hidden in the shed in the rear of her house. The landlady went to the shed as directed by appellant and found the bag described by him containing some cement, the pistol and the $50 in currency which he had taken from the person of his victim. She immediately communicated this information to the police, who in turn advised appellant that

they had knowledge of these facts. Upon being confronted with this evidence, appellant confessed to the murder but falsely stated that he had poured hot oil on the decedent and put the body aboard a railroad gondola. Evidently, this misinformation was given to throw the police off the track in their search for the body. At any rate, appellant was taken to the scene by the police where he reacted the crime and, on that occasion, imparted the correct information that he had thrown Street, who was alive and groaning at the time, into the river. In short order, a diver was brought to the scene and the body recovered. On the next day, appellant gave a second and more detailed confession containing all of the true facts.

Prior to trial, the judge, at the request of defense counsel, appointed a lunacy commission to determine the sanity of appellant. This commission, composed of the Coroner and Dr. C. Grenes Cole, reported to the judge that, in their opinion, appellant was sane and, at the hearing, Dr. N. J. Chetta, the coroner, testified accordingly. There being no evidence offered to contradict the report of the Commission and the testimony of Dr. Chetta, the judge held appellant to be sane. Whereupon, defense counsel reserved Bill of Exceptions No. 3.

Counsel contends that it was error for the trial judge to rule that appellant was sane in the absence of testimony in open court from Dr. Cole, the other member of the Lunacy Commission, and that the failure of Dr. Cole to give evidence deprived appellant of a right guaranteed to him by Article 267 of the Code of Criminal Procedure, LSA–R.S. 15:267.

There is no substance in the bill. Article 267, which provides that the Court may appoint two disinterested physicians to examine the defendant and to testify at the hearing, does not contemplate or render it essential that the members of the Lunacy Commission testify at the hearing. It is only when the findings of the physicians are questioned, or when the defendant or his counsel request that they be present, that it is necessary that they be called to give oral evidence in corroboration of their written report to the judge. In this case, although counsel declares in his brief that the Court refused to call Dr. Cole, we find nothing in the record to support the charge. On the contrary, an examination of the proceedings conducted at the hearing, which are made part of the bill of exceptions, shows that the only objection made by counsel was to the final ruling of the judge that appellant was sane; he at no time requested that he be permitted to examine Dr. Cole.[1]

1. Compare State v. Winfield, 222 La. 157, 62 So 2d 258, in which it is held that it is mandatory, under LSA–R.S. 15:269, that the written report of the members of the Lunacy Commission be accessible to all parties prior to the hearing.

Bills Nos. 7, 9 and 10 have reference to the alleged error of the judge in admitting in evidence, over timely objection, three photographs of the body of the deceased. Counsel maintains that these photographs were gruesome and, being wholly unnecessary to the state's case, they were objectionable as they served only to prejudice the jury against appellant. The case of State v. Morgan, 211 La. 572, 30 So.2d 434, is cited as authority for the contention.

■ We find no merit in the bills. In the first place, an examination of the three photographs discloses that two of them cannot be regarded as gruesome or revolting. They merely depict the sack containing the body of Street after it was recovered from the bottom of the river. The body, except for the feet (which protrude), is completely covered by the canvas sack. Accordingly, as to these photographs, the asserted premise for denial of their admission—gruesomeness—does not exist.

The other photograph is that of the face and head of the dead man showing his gagged mouth and the gaping head wounds inflicted by appellant. It is, of course, inelegant but, after all, all murders, and especially those of the violent type, are revolting to the senses. Indeed, we feel certain that the members of the jury, after hearing the opening statement of the district attorney, were fully prepared and expected to hear and see things of an unpleasant nature. And we daresay that their view of the wounded features of the dead man had no appreciable effect upon them—surely, no more than hearing a recitation of the facts of appellant's shocking misdeed.

The case of State v. Morgan, while pertinent, does not justify maintenance of appellant's position here. In that matter, a ghastly picture of the female victim's body, accentuated in its cadaverous appearance by indentations of the flesh made by iron bars on which it had been placed by third persons after the murder, was offered in evidence. A majority of the Court found the picture to be inadmissible because its introduction was wholly unnecessary to the state's case. There, the ghastliness of the picture was so pronounced and the circumstances surrounding its submission in evidence of such an exceptional nature, that the court was able to draw the conclusion that it was offered solely for the purpose of prejudicing the jury against the defendant.

[4, 5] Neither the photograph nor the circumstances under which it was offered in this matter are on a parity with the Morgan case. The picture was tendered in connection with the testimony of Dr. Wallace Clark after it had been identified by him as that of the person upon whom he performed the autopsy. And, when it was offered, defense counsel did not at first object on the ground that it was gruesome. On the contrary, he claimed that it was inadmissible because the identification of Dr. Clark was incomplete as the

state had not proved "* * * who had the body from the time it left the barge until it showed up in the morgue".

But, aside from this, the photograph was clearly admissible for identification purposes and also in corroboration of the Coroner's procès verbal with reference to the description of the wounds and the cause of death. Albeit, we reiterate our adherence to the views succinctly expressed in State v. Johnson, 198 La. 195, 3 So. 2d 556, that, where the photographs are admissible, the fact that they are so gruesome that they tend to prejudice the jury is not a valid reason for rejecting them in evidence. State v. Morgan is to be regarded as—indeed it is—a case of most unusual circumstances.

■ Bills Nos. 8, 11 and 12 were reserved to the overruling of objections made by defense counsel to the testimony of two state witnesses in which they identified the body (when it was removed from the sack) as that of the victim. The basis of these objections was that the district attorney failed to mention in his opening statement that the body would be identified.

The short answer to these bills is that the premise upon which they rest is without foundation in fact as the district attorney, in his opening statement, said that the body of the deceased "* * * was identified by his brother Frank Street and others".

■ Bill No. 14 was taken when the judge overruled counsel's objection to the testimony of State witness, Maggie Burns, in relation to a telephone call she received from appellant. The objection was based on the thought that, before the witness could relate the conversation she had with appellant, a foundation must be laid, that is, that she must first be asked if she had heard the voice before and knew it to be that of appellant.

The answer to this contention is that the witness stated that she received a phone call from appellant; it was not necessary that any further foundation be laid. If counsel had any doubt as to the veracity of the statement of the witness, she was at his disposal for cross-examination. The case of State v. Dooley, 208 La. 203, 23 So. 2d 46, and other authorities relied on by him do not sustain his position.

■ When the State was laying the foundation for the admission in evidence of appellant's confession, one of the police officers, Capt. William Dowie, was asked on cross-examination whether Detective Werling did not say that, if appellant refused to confess, "* * * we can carry him down to the river and throw him in". An objection by the district attorney was sustained to this question and thereupon Bill of Exceptions No. 17 was reserved. Counsel argues that the action of the judge was highly prejudicial as it operated as an undue curtailment of the right of cross-examination.

There can be no doubt that testimony concerning the suggested statement by a

member of the police force would have been highly relevant if that officer had been on the scene at the time appellant was being questioned. But the record shows that Detective Werling was not present. In truth, immediately before counsel sought to interrogate Captain Dowie in regard to the alleged threat attributed to Detective Werling, he asked "* * * didn't Werling question him?" and Dowie answered "He wasn't there". Hence, the question relative to Werling's statement was not germane to the inquiry then under investigation. If counsel had wished to further pursue this line of examination, that is, if he desired to ascertain whether Werling may have made such a statement at some other time or out of the presence of appellant, he should have reframed his question and made his intention clear to the judge. Since he did not do so, he is in no position to complain.[2]

■ The last bill of exceptions urged on the appeal is Bill No. 18, which was reserved to the introduction in evidence of the two written confessions and certain oral admissions of appellant. These confessions and admissions, to which we have heretofore referred in our statement of the facts of the case, were made on January 10th and 11th, 1951, before members of the police force, a number of whom were present at all times, whereas, others witnessed only some of the statements. All of these officers, 27 in number, were questioned in detail regarding the facts and circumstances surrounding the giving of the confessions and they stated, without equivocation, that no coercion or violent methods were applied and that no promises or inducements of any kind were offered.

On the other hand, appellant testified that he was threatened and beaten by the officers. His counsel says, among other things, that the mere fact that such a large number of police officers avouched that they were present during the giving of the confessions is a circumstance constituting psychological duress. And it is further proclaimed that, since appellant had been under detention (allegedly unlawfully) for four or five days, he was denied due process of law.

These arguments are not convincing. Initially, an examination of the evidence discloses to our satisfaction that appellant, although illiterate, is not an ignorant or inexperienced person. He readily admitted on the stand a criminal record and a reading of his statements demonstrates that he was not only well acquainted with the ways of the police but that he was fully able to cope with their interrogation of him. Nor was he held incommunicado, as suggested by his counsel, the record revealing that he

2. As a matter of fact, when Werling was testifying for the State, counsel did not see fit to interrogate him in regard to the threatening language which counsel later attributed to him during the questioning of Captain Dowie.

was at liberty to use the telephone. In fact, it was the telephone call to his landlady that was his undoing as she reported to the police that she had found, by his direction, the stolen money. It was at that time that appellant, over four days after he had been in the custody of the police, realizing that the State had an airtight case against him, made his first confession in which he partially disguised the truth, falsely telling the police that he had placed the body in a gondola car.

The fact that many police officers were present when appellant made admissions or confessions furnishes no ground for concluding that his statements were not free and voluntary. After all, the question is one of credibility of the witnesses and it appears to us that the State has carried the burden placed on it beyond a reasonable doubt.

The cases of McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 and Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 172, 93 L.Ed. 100, relied on by counsel are not apposite here. The principle upon which those decisions are pitched does not control prosecutions under the laws of this State. Additionally, appellant was not illegally detained in the case at bar, having been charged with vagrancy in violation of LSA–R.S. 14:107.

The conviction and sentence are affirmed.

FOURNET, C. J., absent.