(No. 33963.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LEROY JACKSON, Plaintiff in Error.

*Opinion filed November 26, 1956.*

WILLIAM A. CAIN, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, JOHN GUTKNECHT, State's Attorney, of Chicago, (FRED G. LEACH, EDWIN STRUGALA, IRWIN D. BLOCH, JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and WILLIAM L. CARLIN, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

After a jury trial in the criminal court of Cook County, the defendant, Leroy Jackson, was convicted of murder and his punishment was fixed at death. Execution has been stayed pending writ of error proceedings in this court.

As grounds for reversal, it is contended that the proof is insufficient to support the verdict and that prejudicial error intervened at the trial.

The prosecution's case was based in large part upon a 23-page written confession elicited from the defendant. Prior to trial, the defendant sought to have this statement suppressed, asserting that it was procured by force and abuse. After a lengthy hearing, the trial court denied his motion, and error is assigned on this ruling.

At the hearing on the motion to suppress, the defendant testified that he received beatings and other abuse from about every law officer involved. However, he presented no witness but himself in support of the charge, there was no medical or photographic corroboration, and he had told no one, including a preliminary hearing magistrate, of any

such misconduct. In addition, he was flatly disputed by thirteen witnesses who had been with him at various times between his arrest and the signing of the confession.

The statement was taken by a court reporter in the presence of an assistant State's Attorney (who did the interrogating), police officers Henry Jurgensen and Antone Prunckle, Dorothy Nichols and Ida Mae Wilson. The two women were prosecution witnesses, who subsequently testified at the trial. After transcription, the statement was signed in the presence of the court reporter, the assistant State's Attorney, the two ladies, officer Jurgensen, and a homicide detective named William McCarthy. McCarthy was not present at the questioning; and Prunckle, who was, did not witness the later signing. All of the foregoing persons testified, and each in some material respect refuted the defendant's claims.

On this record, the trial judge did not err in refusing to suppress the statement. (*People* v. *Gavurnik*, 2 Ill.2d 190.) Significantly, the defendant did not see fit before the jury to challenge the voluntary character of the confession, and it was admitted in evidence without objection.

Briefly, the confession establishes the following: At around 2:10 A.M. on April 9, 1954, the defendant burglarized the apartment of Mrs. Dorothy Nichols. He found little to take, but did leave with a small gun from Mrs. Nichols' purse. However, he later concluded the gun "wasn't real," stating "I have never seen one like it before in my life." And finding the gun would not work, he returned to the Nichols apartment, where he found a paring or potato knife. He took this knife along for use in another burglary. The defendant then walked to where the apartment of Louise Jackson was located, a distance of two blocks. (Although they bore the same family name, the defendant and Louise Jackson were not related.) He climbed a fire escape to the third floor, entered a window, found Louise Jackson in bed, and told her it was a

"stick-up." And in his own words: "She gave me a struggle so I stabbed her and run out the door."

There was substantial corroboration of the facts related in the confession. Mrs. Nichols testified that the defendant admitted to her he had taken the knife during the burglary of her apartment and that he used it to stab the decedent. Three witnesses described finding the decedent, naked and bleeding from the breast, on the stairs in her apartment building. Three witnesses described her ransacked apartment. The two arresting officers testified that they apprehended the defendant on a Chicago bus, where he reached for a gun just before being taken. Eight witnesses testified to oral admissions of the defendant to the effect that he had stabbed the decedent with a knife. A pathologist's finding that the decedent died of a knife wound in the chest was stipulated, and her brother was called regarding his identification of her body.

Exhibits admitted were the written confession, the knife, the Nichols gun, a photograph of the decedent, two photographs of portions of her apartment, and the gun the defendant had when arrested. The photograph of the decedent was indorsed by the defendant "this is the lady I stab" and signed by him. One of the room pictures was indorsed "this is the window I came in," and the other "this is the door I left by." Both were likewise signed by the defendant.

The defendant did not take the stand or adduce any evidence on his own behalf. The foregoing evidence, therefore, stands uncontradicted, and is sufficient to prove guilt beyond all reasonable doubt.

While a claim for outright reversal must be rejected, we are of the opinion that justice does require a remandment for a new trial. This follows from the fact that there were admitted in evidence certain hearsay statements attributed to the decedent and a photograph of the decedent taken after the autopsy. Under the circumstances, both

matters were inadmissible and very prejudicial. It must be remembered that the jury in this case not only determined the question of guilt but also fixed the punishment itself. "The legislature has seen fit by statute to clothe juries with a wide discretion in determining the punishment to be suffered by one convicted of murder, varying from death, or imprisonment for his natural life, to a term of not less than fourteen years. This court has held that when one is tried for murder he has a right to stand before a jury unprejudiced by incompetent, irrelevant evidence and appeal to them to spare his life." *People* v. *Smith,* 413 Ill. 218, 222.

We discuss initially the hearsay evidence. About an hour after the stabbing, the decedent was discovered, lying on the stairs leading to her apartment, by two friends who were also occupants of the building. Over objection, these witnesses, Lily Curry and Mary Mason, were permitted to tell the jury (in the words of Mary Mason) the following: "She told me that a little, short, skinny nigger * * * broke in on her. She said 'He stabbed me with this knife.' She said 'He went all the way, I pulled it out myself.' * * * She said he then ransacked her apartment, in all her drawers and in her trunk. I helped her into her apartment with Clyde Ewing assisting me. * * * She said she had been down there since 3:00 o'clock. She said he kicked her down the steps. She says since 3:00 o'clock she was trying to crawl back up the steps."

The State concedes that this testimony was not qualified as a dying declaration, but it does contend it was part of the *res gestae* and therefore admissible as an exception to the hearsay rule. However, it cites but one case that is in any way analogous, *State* v. *Peters,* 90 N.H. 438, and that decision differs substantially from the case at bar. There the injured party was discovered almost immediately after the wound was inflicted and the statements could properly be termed "a spontaneous verbal reaction." Here,

there was a delay of at least an hour, and we have found no case in which statements made after such a lapse of time have been held admissible as a part of the *res gestae.*

The State argues, however, that even if the admission of this testimony was erroneous, it did not prejudice the defendant, inasmuch as it was merely cumulative. This is not borne out by the record. For one thing, Louise Jackson is quoted as saying the defendant kicked her down the stairs. There is no proof of this anywhere else in the record. The defendant, in his confession, categorically denied that he did so. Hence the testimony was not merely cumulative, and it was obviously very prejudicial to the defendant. The added circumstance of the accused kicking a woman down the stairs after stabbing her is calculated to inflame a jury and cause them to assess a more severe penalty than they might otherwise have done. We are unable to say that this inadmissible evidence could not have been a determining factor in the bringing in of the death penalty for this defendant.

In addition, the State was permitted to introduce in this case a photograph of the deceased taken at the hospital after the autopsy. It shows the face and neck of an obese Negro lady with her mouth slightly open and her eyes nearly shut. And there appear rather distinctly some of the sutures of the autopsic incision.

Whether the photograph of a deceased is properly admissible depends upon whether it has probative value, such as aiding a jury in the better understanding of medical testimony or aiding them in determining the manner in which the wound was inflicted. (See, *e.g., People* v. *Donaldson,* 8 Ill.2d 510; *People* v. *Jenko,* 410 Ill. 478; and *People* v. *Jersky,* 377 Ill. 261.) Mindful of the prejudicial emotion that might be aroused by the introduction of a victim's photograph, the courts have, on the whole, been strict in their requirement that a proper purpose be shown for the introduction of such an exhibit.

The State seeks to justify the admission of this photograph on the ground that it constituted an admission, this resulting from the notation written on the photograph by the defendant. However, the defendant's stabbing of the decedent was established in several other ways, and the photograph, at best, was cumulative. In this regard, it may be pointed out that the State was permitted to reopen its case, after the defendant had rested, for the purpose of introducing the exhibit. Therefore, it was clear at that time that defendant would not controvert the fact of the stabbing; and the only remaining use of the photograph from the State's standpoint was to arouse the emotions of the jury so that they would administer a more severe penalty. This is particularly true in view of the fact that the photograph also displays a portion of the autopsic incision, a feature which accentuated its inflammatory character.

For the foregoing reasons, this case must be remanded for a new trial. But to guide the trial court, we consider additionally those other questions which are likely to come up again on a new trial, namely, the proof concerning the Nichols burglary, including the admission of the gun taken in that burglary, and the admission of the gun found on the defendant's person when arrested.

As to the proof of the Nichols apartment burglary, it is settled that proof concerning such other offenses is not inadmissible when it shows or tends to show a particular intent or motive or the defendant's connection with the crime charged. (*People* v. *Murphy,* 276 Ill. 304; 14 I.L.P., Criminal Law, sec. 343.) In the cited case, evidence of another murder was held properly admitted to show the connection between the weapon used in both murders and the defendant in the murder case being tried. Here, the knife and gun taken from the Nichols apartment were used in and to effectuate the burglary of the Jackson apartment. It was proper to show where and why the defendant acquired these items, one of them being the instrument of

death in the homicide case being tried. And certainly the defendant cannot complain of the gun's admission on the ground that he discovered it to be less effective than he had at first supposed. It was very material, in respect to his motive at the Jackson apartment where he next went, to show that this gun would not serve his purpose, so he went back and got the knife.

Likewise, it was not error to admit the gun found on the defendant's person when arrested. The arrest was made on a Chicago bus. Just before the police officer seized the defendant, the latter had placed his hand under his coat, where it was discovered he had a loaded gun. It was this gun that was admitted in evidence. This court has held that where such a weapon is found on the person of a defendant, fleeing from or sought for the crime of murder, even though no claim is made that the accused used that weapon in committing the particular crime, the weapon may be the subject of testimony concerning the details of the arrest and also be admitted in evidence. *People* v. *Lenhardt,* 340 Ill. 538; *People* v. *Durkin,* 330 Ill. 394; *People* v. *Dale,* 355 Ill. 330. Cf. *People* v. *Smith,* 413 Ill. 218.

Finally, the defendant's complaint of improper questtioning by the prosecutor is not well taken. Objections were frequent, but were carefully handled by the court.

The remaining matters complained of are not likely to reoccur upon a new trial, and there is no need to discuss them here.

The judgment of the criminal court of Cook County is reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*