441 P.2d 512

**The STATE of Utah, Plaintiff and Respondent,**

v.

**Roy Lee POE, Defendant and Appellant.**

**No. 10716.**

Supreme Court of Utah.

June 4, 1968.

---

Ronald N. Boyce, Salt Lake County Bar Legal Services, Salt Lake City, for appellant.

Phil L. Hansen, Atty. Gen., Gary A. Frank, Asst. Atty. Gen., Salt Lake City, for respondent.

CALLISTER, Justice:

Defendant, Roy Lee Poe, was convicted of the first degree murder of Kenneth Hall. The murder occurred in St. George, Utah (population about 5,130), and the trial was held there. The deceased had been a life-long resident of the community, whereas the defendant was a comparative newcomer. The jury, in returning its verdict of guilty, did not recommend life imprisonment.[1] Whereupon, the court pronounced the death penalty.[2]

There was sufficient evidence to sustain the jury's verdict and upon appeal defendant does not contend otherwise. Rather, he claims that several errors were committed during the trial each of which warrant a reversal of the conviction and a new trial. If this court should not deem any one of the alleged errors to be prejudicial, then he contends that their cumulative effect amounted to a denial of a fair trial.

1. As provided in Sec. 76-30-4, U.C.A. 1953.
2. In the absence of the jury's recommendation of life imprisonment, the court is required to impose the death penalty. State v. Romeo, 42 Utah 46, 128 P. 530 (1912).

■ Defendant first contends that the trial court committed prejudicial error in placing the sheriff in charge of the jury during its deliberation. The sheriff had testified as to his investigation of the Hall home wherein the murder had taken place and the victim's body discovered. However, his testimony was routine and did not link the defendant to the crime. As jury bailiff he had no personal contact or conversation with any of the jurors. They retired to the jury room, remained therein for only three hours and 20 minutes when they returned and announced their verdict.

The foregoing facts distinguish this case from Turner v. State of Louisiana,[3] relied upon by defendant. In that case two deputy sheriffs who were key prosecution witnesses were placed in charge of a sequestered jury. They drove the jurors to and from cafes for meals and to and from their lodging each day, conversed with them and ran errands. The Supreme Court stated at 379 U.S. 473, 85 S.Ct. 550:

* * * It is to be emphasized that the testimony of (the deputies) was not confined to some uncontroverted or merely formal aspect of the case for the prosecution. * * *

* * * We deal here not with a brief encounter, but with a continuous and intimate association throughout a three-day trial. * * *

Perhaps it might have been a wiser course for the trial court to have designated someone other than the sheriff as jury bailiff, but under the circumstances we do not deem it to have been error, least of all, prejudicial error.

■ As a second point, defendant contends that he was denied a fair trial because of "the community pattern of thought as expressed by potential jurors and (because) of the proximity of relationships which existed between members of the jury and witnesses for the prosecution, the victim, the prosecutors, and the defendant." It cannot be disputed that a large majority of the prospective jurors were aware of the crime and some of its purported facts. This could hardly be otherwise in a sparsely populated community (Washington County, of which St. George is the county seat, has a population of 10,-271). However, the trial judge carefully and exhaustively examined the panel and the prospective jurors. There was selected a jury of 12 who had neither formed an opinion or, if they had, it would not prevent them from basing their verdict solely upon the evidence. We cannot say that it was biased or prejudiced. Furthermore, the jury panel was passed for cause by the defendant.

Nor is it strange that members of the jury were acquainted with the sheriff,

3. 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965).

some of the witnesses for the prosecution,[4] the victim, the defendant, and the prosecutors. However, we are unable to find in the record wherein these acquaintanceships were prejudicial to the defendant.[5]

As another point, defendant alleges that the trial court committed prejudicial error by commenting on the credibility of a prosecution witness in such a manner as to bolster his testimony before the jury. We have examined the record with respect to this contention and find it to be without merit.

Finally, defendant contends the trial court abused its discretion in admitting some colored slides into evidence and permitting them to be displayed to the jury by means of a slide projector and screen. With this contention, we are in agreement.

To begin with, the identity of the deceased, his death and its cause had already been established. Black and white photographs had been introduced showing the victim lying in his bed, in a sleeping position, with two bullet holes in his head. The colored slides were made during the course of an autopsy. To describe them as being gruesome would be a gross understatement. One of them, for example, depicted the deceased's head, showing the base of the skull after the skull cap and brain had been removed by the pathologist. The skin is peeled over the edge of the skull showing the empty brain cavity. Another is a top view of the empty cavity. They would have been gruesome in black and white but the color accentuates the gruesomeness.

Initially, it is within the sound discretion of the trial court to determine whether the inflammatory nature of such slides is outweighed by their probative value with respect to a fact in issue. If the latter they may be admitted even though gruesome.[6] In the instant case they had no probative value. All the material facts which could conceivably have been adduced from a viewing of the slides had been established by uncontradicted lay and medical testimony. The only purpose served was to inflame and arouse the jury.[7]

It must be remembered that the jury in this case not only determined the question of guilt but also fixed the punishment itself. The only use of the slides from the prosecution's standpoint was to arouse the emotions of the jury so that they would not recommend life imprisonment. It could very well be that the jury would have returned the same verdict absent its view

---

4. Most members of the jury were also acquainted with one or both of defendant's counsel.

5. It is to be noted that defendant did not move for a change of venue.
6. 73 A.L.R.2d p. 787.
7. See Oxendine v. State, 335 P.2d 940 (Okl. Cr.1958); 73 A.L.R.2d 802.

of the slides. However, with the defendant's life at stake, this court should not hazard a guess. The slides could very well have tipped the scales in favor of the death penalty.[8]

■ The counsel for defendant did not make the proper objection to the admission of the slides. However, this court will not allow such a technicality to influence its decision in a case such as this.[9]

Because the trial court abused its discretion in permitting the slides into evidence and because of the other doubtful aspects of the trial, this case is reversed and remanded for a new trial.

CROCKETT, C. J., and HENRIOD, J., concur.

ELLETT, Justice (dissenting).

I dissent from 'that part of the main opinion holding that the trial court abused its discretion in admitting colored slides into evidence. In the first place, colored pictures should be dealt with exactly the same as black and white pictures. All pictures are admissible in evidence if they tend to prove a matter which would be relevant for a witness to testify to orally. 23 C.J.S. Criminal Law § 852(1)a. When pictures are thus competent there cannot be any proper objection made to them on the ground that they may prejudice the jury.

All evidence given tends to prejudice the jury, and pictures are no exception. Just why anyone should ever have supposed a colored picture should be rejected because it shows a true likeness of any given scene escapes me. One would think that of two pictures, the one more accurately portraying the scene would be the proper one to place in evidence.

The fact that a picture may be gruesome is no reason for excluding it from evidence if it is otherwise competent and relevant. It is a matter of discretion with the trial judge to determine whether the probative value of the picture outweighs the possible adverse effect which might be produced upon being shown to the jury. 23 C.J.S. Criminal Law § 852(1)c. This discretion on the part of a trial judge to admit or reject evidence should not be interfered with by an appellate court unless manifest error is shown.

In this case the defendant on appeal complains because some colored pictures were admitted into evidence and claims that the jury was prejudiced against him by reason of the gruesome appearance of those pictures.

It is true that the pictures taken of the deceased before he had been removed from his bed showed a considerable amount of blood on his face and on the bedding. He was lying with his arms folded across his

8. People v. Jackson, 9 Ill.2d 484, 138 N.E. 2d 528 (1956).

9. State v. Cobo, 90 Utah 89, 60 P.2d 952 (1936).

chest exactly as if he were asleep. He had two holes in his face, and one could not tell by looking at the holes what had caused them.

The defendant had entered a plea of not guilty, and it was incumbent on the State to prove beyond a reasonable doubt that death was caused by felonious means. Whether to let the jury see pictures of the actual scene was a matter within the sound discretion of the trial judge.

The cause of death had to be proved, and so there was an autopsy on the body. The doctor testified as to two metallic substances he found inside the cranium of the deceased and traced the course from the holes in the head with a metal probe which he placed through the holes to the place where the metallic substances were found. It was relevant and proper for the State to show that the deceased was shot while asleep in bed, and these metallic probes in the head were photographed to show the course of the bullet.

This matter has been before the courts of practically every state in the Union, and the law seems to be well settled to the effect that the judge committed no error in permitting these pictures to be shown to the jury in this case.

A case very similar to the instant one is that of State v. Johnson, 57 N.M. 716, 263 P.2d 282, at page 284 (1953), wherein it is said:

It is argued that the court erred in the admission of certain photographs. The photographs show the scalp had been removed from the skull of the deceased, exposing fractures of the skull and certain fleshy part of the head and shoulders of the deceased. The objection made is that the pictures are so gruesome and inflammatory, the minds of the jurors were prejudiced thereby. We do not so appraise them. While the doctor testified in terms descriptive of the wounds, the photographs gave the jury a visual explanation of his testimony. It must be remembered that appellant was standing on his plea of not guilty when the photographs were admitted. The state was put to the task of proving the essential elements of the crime. Whether the deceased was fatally injured was an issue to be determined by the jury. The extent and nature of the wound and the atrocity of the crime also were material questions. Clearly, the photographs, though cumulative, served to corroborate the doctor's testimony and were admissible for that purpose. [Citations omitted.] The admission of photographs rests largely in the discretion of the trial court and ordinarily his decision will not be disturbed. We cannot say the court abused its discretion.

A sampling of other cases from the various states is listed below.

In State v. Bucanis, 26 N.J. 45, 138 A.2d 739, 73 A.L.R.2d 760 (N.J.1958), a picture, was admitted into evidence taken during an autopsy of the victim. At pages 742–743, 138 A.2d at pages 742 the court said:

S–26, the photograph objected to, was taken after the autopsy had been performed. The view is from a low level and close to the body. It shows a portion of the right hip, all of the torso, the right arm and the head of the deceased. Appellant accurately describes the subject: "Incisions had been made allowing the flesh to be retracted to expose the abdominal organs and the inner structure of the chest. In the picture the examiner's knife lies on the exposed portion of the abdomen, a sponge and other instruments are on the table in the immediate foreground and in the corner of the table beside the subject lie organs which have been removed. The subject's head appears to have been supported and the left eye is partly open."

\*   \*   \*   \*   \*   \*

Our more recent decisions involving the question sub judice have held, in substance, that admission is mainly, if not entirely, within the discretion of the trial judge whose decision will not be overturned save for marked abuse.

\*   \*   \*   \*   \*   \*

In State v. Huff, 14 N.J. 240, 102 A.2d 8, 13 (1954), four photographs were introduced into evidence showing the body of the deceased in a grave and shortly after it had been removed therefrom. Two of these were in color and their admission was challenged upon the basis that they were "secondary, unnecessary, irrelevant and incompetent" and were "gruesome" and "horrified and sickened those inspecting the photographs." We held: "Photographs of unpleasant and gruesome aspects of a murder case are not objectionable for this reason alone, and their admission has frequently been sustained," citing many of the cases already mentioned. For the first time we approved the use of color photographs, saying there was no logical reason why they should not be admitted into evidence subject to the same limitations and restrictions already placed upon black and white photographs.

In Commonwealth v. Ballem, 386 Pa. 20, 123 A.2d 728 (1956), the charge was murder, and the identity of the victim was in issue. While alive the victim had a scar on one hand. This hand was severed from the body, and a transparency of said hand was projected onto a screen for the jury to see in determining the identity of the victim. The Pennsylvania Supreme Court held at page 732:

\*   \*   \*   Pistols, fruits of the crime, clothing, parts of the body of the person

killed, everything pertaining to the crime which will aid the jury in its consideration of the (alleged) crime and the guilt or innocence of the accused, is admissible. The admission or exclusion of these objects and particularly of photographs is a matter which is within the sound discretion of the trial Judge, and the fact that a picture is gruesome is not sufficient to exclude it. * * *

In State v. Solomon, 222 La. 269, 62 So. 2d 481 (1952), the Louisiana Supreme Court had before it the same question that is presented in the instant case. The court said at page 484:

* * * The picture was tendered in connection with the testimony of Dr. Wallace Clark after it had been identified by him as that of the person upon whom he performed the autopsy. And, when it was offered, defense counsel did not at first object on the ground that it was gruesome. On the contrary, he claimed that it was inadmissible because the identification of Dr. Clark was incomplete as the state had not proved " * * * who had the body from the time it left the barge until it showed up in the morgue."

But, aside from this, the photograph was clearly admissible for identification purposes and also in corroboration of the Coroner's proces' verbal with reference to the description of the wounds *and the cause of death.* Albeit, we reiterate our adherence to the views succinctly expressed in State v. Johnson, 198 La. 195, 3 So. 2d 556, that, where the photographs are admissible, the fact that they are so gruesome that they tend to prejudice the jury is not a valid reason for rejecting them in evidence. * * * [Emphasis added.]

In State v. Moore, 303 S.W.2d 60 (Mo. 1957), the defendant was prosecuted for the murder of his wife. He claimed that it was reversible error to admit four pictures of the deceased showing the wound and that a portion of the upper chest and left forearm had been blown away by the blast of the gun. The State offered the exhibit on the theory that the location of the wound showed that defendant acted consciously and took accurate aim when firing the gun. The Missouri Supreme Court at page 65 correctly sets forth the law in the following language:

The rule as to the admissibility of this sort of visual evidence is well settled. Demonstrative evidence of this character is admissible if it tends to connect the accused with the crime, or to prove the identity of the deceased, or show the nature of the wound, or throw any relevant light upon a material matter at issue. [Citations omitted.] Defendant concedes that the admission of this sort of evidence is largely within the discretion of the trial court, but contends that the court, in admitting the exhibits,

abused its discretion, saying that the photographs were unnecessary and should have been excluded because "the identity of deceased, the position of the body and the nature of the wounds had been exactly and precisely established by other evidence."

Even if we assume that there was evidence upon all of the material facts shown by the photographs it does not follow that the exhibits were inadmissible. In State v. Tyson, 363 Mo. 1242, 258 S.W.2d 651, 654 [4], we find this statement relating to the application of the rule: "It is not a valid objection that witnesses have testified to matters shown by photographs because pictures give a much clearer impression of many things than any oral description and that is the reason for using them." [Citation omitted.]

Our own Supreme Court has also had this matter before in the case of State v. Woods, 62 Utah 397, 220 P. 215(1923). In that case the admission into evidence of the picture of the burned body of defendant's wife was approved by this court. In State v. Russell, 106 Utah 116, 145 P.2d 1003 (1944), the trial court admitted into evidence pictures of the deceased. Although that case was reversed on other grounds, this court approved the reception of the pictures, using the following language in the last paragraph of the opinion:

* * * The pictures of the deceased, taken after her death and showing her wounds, were clearly admissible. Even though the defendant did admit the killing, he did not admit the intent to kill and the nature of the wounds may be material on that point. The pictures showed the nature of the wounds more clearly than the testimony of witnesses could. * * *

In the instant case the position of the metal probes clearly shows that the course of the bullet was practically parallel to the body of the victim, and from the photographs introduced in evidence the jury could believe that he was asleep in bed at the time he was shot.

Before allowing the pictures to be seen by the jury in this case, the court on its own motion excused the jury and had the pictures projected onto a screen, "so that counsel for the defendant may have an opportunity to object to them, if they desire after seeing them. * * * I am going to ask that they be shown on the screen and out of the presence of the jury so that counsel may voice an objection if they have any objection."

The pictures were shown out of the presence of the jury, and the only objection made by counsel for the defendant was that the pathologist did not know the deceased personally and, therefore, the pictures were not properly identified as being those of Kenneth Hall, the deceased. The identity of the body was otherwise established. The trial court did not abuse its discretion in

admitting into evidence these pictures, especially when no objection was suggested by counsel on the ground that there was anything gruesome or inflammatory about them.

The pictures were taken to show a condition caused by the pathologist in his quest to determine the cause of death. There was nothing whatsoever to suggest that the defendant had participated in the removal of the brains from the cranium of the deceased. It might be that people unaccustomed to seeing operations would find the sight of the inside of a human head to be sickening or revolting, but that does not warrant a belief that any passion would be engendered against the defendant when such pictures were shown on the screen.

Had defendant wished to avoid having the jury see the pictures, he could have stipulated that Kenneth Hall died as a result of being shot in the face while he was lying in bed. This would have been no admission that he was the one who fired the shots. He didn't have to do this, but he ought not now complain because the State proved those elements of the crime of murder in the first degree which were put in issue by his plea of not guilty.

The Washington Supreme Court in the case of State v. Payne, 25 Wash.2d 407, 171 P.2d 227, at page 231 (1946), had the question raised on appeal for the first time, as we have in the instant case, and in answering that matter said:

He contends that the court erred in permitting photographs of gruesome objects to go to the jury.

A complete answer to this assignment is that no objection was made to the admission in evidence of the pictures in question. In any event, the admissibility of pictures shown to be competent, relevant and material is beyond controversy. A qualification of the rule based upon degrees of unpleasantness would produce nothing but confusion in the law.

The main opinion relies on State v. Cobo, 90 Utah 89, 60 P.2d 952, as authority for this court to reverse the lower court in the instant case on a point not raised at trial. The Cobo case involved an erroneous instruction given to the jury in that the trial court used the phrase *murder in the first degree* when it should have used *voluntary manslaughter*. The court also failed to tell the jury that to constitute the crime of voluntary manslaughter, *the killing must be willful or intentional.* In speaking of the error in the Cobo case, this court said at 90 Utah 102, 60 P.2d 958:

\* \* \* But in capital cases and in cases of grave and serious charged offenses and convictions of long terms of imprisonment, cases involving the life and liberty of the citizen, we think that

when palpable error is made to appear on the face of the record and to the manifest prejudice of the accused, the court has the power to notice such error and to correct the same, though no formal exception was taken to the ruling.

That which was said regarding such palpable errors in instructing the jury hardly applies to the admission of competent evidence which is first shown to counsel and then to the jury without any valid objection being made thereto, as is the situation in the instant case.

Since most cases involving gruesome pictures are concerned with conditions created by the defendant, the jury is much more apt to be affected against the defendant than it would be when the condition is caused by a surgeon in the quest for truth. The pictures so vividly described in the prevailing opinion were no more gruesome than than was the open heart surgery portrayed on television a few nights ago.

The evidence given to the jury in this case would warrant a finding that the defendant was a guest in the home of the deceased; that while the deceased slept, the defendant shot him twice with a .22 caliber rifle; that defendant immediately sold the murder weapon and deceased's high-powered rifle; and that defendant stole the deceased's station wagon and was intending to get to Old Mexico down the back roads from Las Vegas, Nevada, where he was arrested.

The verdict of murder in the first degree without recommendation was warranted by the evidence. The defendant had a fair trial before an unbiased jury, and I think this conviction should be affirmed.

TUCKETT, J., concurs in the dissenting opinion of ELLETT, J.